[Cite as *Henderson v. Euclid*, 2015-Ohio-15.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101149**

**TROY HENDERSON, ET AL.**

PLAINTIFFS-APPELLANTS

vs.

**CITY OF EUCLID, ET AL.**

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-791785

**BEFORE:** Kilbane, J., Jones, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** January 8, 2015

**APPELLANT**

Troy Henderson, pro se
11040 Clark Road
Chardon, Ohio 44024

**ATTORNEYS FOR APPELLEES**

Chris Frey
Law Director, City of Euclid
John F. Manley
Assistant Law Director
585 East 222nd Street
Euclid, Ohio 44123

MARY EILEEN KILBANE, J.:

{¶1}   Plaintiff-appellant, Troy Henderson ("Henderson"), pro se, appeals from the order of the trial court, awarding summary judgment to the defendants-appellees in Henderson's civil action for damages arising from his arrest, indictment, and subsequent acquittal on various criminal charges.   For the reasons set forth below, we affirm.

{¶2}   On November 23, 2010, Melanie Allamby ("Allamby"), Henderson's former girlfriend, reported to Euclid police that in March or April 2010, Henderson took her 1998 Dodge Caravan ("Caravan") without her permission.   Officer Dave Williams ("Officer Williams") took the report, which was designated as "Unauthorized Use of A Motor Vehicle."   According to the police report prepared on this date:

> Melanie Allamby reported the following: she was letting ex-boyfriend Troy Henderson use her vehicle.[1]   She has asked Troy several times to return the vehicle but he refuses to do so.   I left a message for Troy stating that if he does not return the vehicle to Melanie it may be entered as a stolen vehicle.

{¶3}   The record next indicates that "[o]n December 9, 2010, Allamby contacted the city prosecutor to upgrade her report to a stolen auto."   She appeared at the police station, was sworn according to law, and signed a document that set forth that she understood the consequences of filing a criminal charge, including potential charges of perjury, falsification, and an action by the accused for malicious prosecution.   She then averred, "I desire to sign a criminal complaint against Troy Henderson for theft of my [motor vehicle]."   She was then again sworn according to law and signed an affidavit accusing Henderson of theft of the vehicle pursuant to R.C. 2913.02(A)(2).

{¶4}   On December 14, 2010, a supervising officer prepared a report, which stated:

---

[1]The record indicates that Allamby obtained the vehicle on August 31, 2007.

Since the report was originally an unauthorized use complaint, Henderson was not listed as a suspect. After conferring with the city prosecutor it was upgraded to a stolen auto.

**{¶5}** The vehicle was located and towed on February 21, 2011. Henderson was arrested on September 16, 2011, and arraigned. On that same date, an assistant county prosecutor signed a criminal complaint against Henderson for theft of a motor vehicle, pursuant to R.C. 2913.02(A)(2).

**{¶6}** Euclid Police Sergeant Mitch Houser ("Sergeant Houser") conducted a follow-up investigation and spoke with Henderson after his arrest. Henderson waived his rights and advised Sergeant Houser that he had not stolen the vehicle and that in June 2010, Allamby signed over title of the 1998 Caravan to Henderson's mother, Barbara Brown ("Brown"). Henderson maintained that "Allamby is lying about the vehicle being stolen because she is angry at him" about a custody matter over their child. Sergeant Houser confirmed that the vehicle was titled to Brown on June 25, 2010. However, Sergeant Houser's follow-up investigation states the following:

> I spoke to Allamby over the phone and she advised that her signature on the previous title (#1807291028) was a forgery. She adamantly denied ever signing the title over to anyone. Allamby told me that sometime around March or April of 2010, Henderson took the vehicle without her permission. She was aware he had it and did not want to involve the authorities in retrieving her vehicle. However, later in 2010, Henderson was involved in an accident and Allamby was cited for wrongful entrustment. At that point, Allamby demanded that Henderson return the vehicle. Henderson refused to return the vehicle, so on November 23, 2010, Allamby made an "Unauthorized Use of a Motor Vehicle" report with the EPD. On December 9th, 2010, Allamby contacted the City Prosecutor to upgrade the status of the vehicle as stolen and signed a warrant for Felony Theft (Motor Vehicle) at the City Prosecutor's office.
>
> Allamby told me she was not aware that the title had been forged until approximately February of 2011 when she was involved in a civil proceeding with Henderson. Allamby told me that she made a police report with Patrol Sgt.

Knack regarding the forgery but I could locate no such report. Allamby said that she had a copy of the report and would provide it to me at a later date.

{¶7} Additional follow-up information was obtained about Allamby's prior police report for forgery a few days after Henderson was arrested. Sergeant Houser determined that on April 30, 2011, Allamby had gone to the Euclid police headquarters and alleged that "Henderson forged her name on her vehicle's title, notarized the title himself, and then had the title registered in his mother's name at the Title Bureau."

{¶8} Sergeant Houser also spoke with Brown in his follow-up investigation. Brown stated that her son had handled the matter concerning the car. Sergeant Houser determined that Henderson was the notary who witnessed the title transfer to Brown. Allamby told Sergeant Houser that the title had been forged, and that she did not transfer the car to Henderson's mother.

{¶9} On October 4, 2011, Henderson was indicted in Case No. CR-11-554594, in a three-count indictment, charging him with grand theft, in violation of R.C. 2913.02(A)(2); receiving stolen property, in violation of R.C. 2913.51(A); forgery and forging identification cards, in violation of R.C. 2913.31(A)(1); and tampering with records, in violation of R.C. 2913.42. The matter proceeded to a jury trial on March 22, 2012. On March 23, 2012, the trial court issued the following entry:

> Trial resumes. The state rests. Defendant moves for acquittal pursuant to rule 29. Motion denied. Defense presents evidence. Defense rests and again moves for acquittal pursuant to rule 29. Motion denied. Jury deliberates. The jury returns a verdict of not guilty of all counts.

{¶10} On September 19, 2012, Henderson filed a pro se civil action against the city of Euclid ("Euclid"), an assistant prosecutor, the Euclid municipal judge, Sergeant Houser, Officer Williams, Detective Danny Sawyer ("Detective Sawyer"), and Captain Ralph Dole ("Captain Dole"). In his second amended complaint for relief, Henderson alleged that on November 2,

2010, Officer Sawyer filed a report for the unauthorized use of the Caravan. According to Henderson, the vehicle belonged to "Troy H. Henderson" before it belonged to Allamby, and in June 2010, it was registered to and owned by Brown at the time that Allamby filed her criminal complaint for unauthorized use of the motor vehicle. Henderson alleged that since Allamby no longer owned the car, there was no basis for Henderson to face criminal charges connected with his use of the car, and there is no evidence of forgery of her car title. However, based upon inaccurate information in the report and untrue information provided by Allamby, a criminal arrest warrant was issued against him. This warrant, Henderson alleges, was signed by the Euclid municipal judge, which improperly led to his arrest and indictment. Henderson set forth claims for false arrest, malicious prosecution, breach of fiduciary duty, false imprisonment, infliction of emotional distress, negligence, abuse of process, civil conspiracy, loss of consortium, and violation of civil rights under 42 U.S.C. 1983.

{¶11} On September 12, 2013, the Euclid municipal judge and assistant prosecutor moved for summary judgment, arguing the judge is entitled to absolute immunity in the performance of her official duties and that the prosecutor's only involvement in the matter was to notify Allamby that in the event she filed charges, she could not later drop them. These defendants additionally argued that there was probable cause to arrest Henderson based upon the totality of the circumstances and from the perspective of a reasonable officer, given Allamby's sworn criminal complaint, the indictment issued by the grand jury, and the successive denials of Henderson's Crim.R. 29 motions to dismiss the charges.

{¶12} Henderson filed a brief in opposition and alternative motion for summary judgment. He argued that there were genuine issues of material fact whether Allamby was actually the owner of the Caravan and whether he forged the title to the vehicle. He maintained

that the defendants violated his rights, were derelict in their duties, and acted in bad faith, with malice and reckless disregard for the facts.

{¶13} On September 25, 2013, Sergeant Houser, Captain Doles and the other police officers moved for summary judgment. Within this motion, defendants asserted that Euclid may not be held liable under 42 U.S.C. 1983, on a theory of respondeat superior. Captain Doles, Detective Sawyer, and Officer Williams also averred that they were not involved, in any capacity, in the investigation of the matter or the arrest of Henderson. Sergeant Houser averred that he was not involved in the preparation of Allamby's criminal complaints, and he was not involved in Henderson's arrest. The defendants additionally argued that the officers acted within their qualified and statutory immunity because they did not fabricate or ignore evidence and, in undertaking their investigation, they considered:

> [Henderson] and Allamby's mutual claim to ownership of the same vehicle, of Allamby's sworn testimony that she did not execute title to her vehicle or voluntarily ownership of the vehicle to [Henderson's] mother. They were aware that Allamby and [Henderson] were estranged and that [Henderson] notarized the vehicle title.

{¶14} The defendants also argued that there was probable cause to arrest Henderson given the grand jury indictment and the successive denials of Henderson's motions to dismiss under Crim.R. 29.

{¶15} Henderson filed a brief in opposition and alternative motion for summary judgment. He insisted that there was no probable cause to arrest him because Allamby no longer owned the car and there was no evidence her car title had been forged. He also submitted responses to interrogatories in which Detective Sawyer and Officer Williams admitted that they had no knowledge of the alleged forgery, grand theft, or theft of car title prior to the felony arrest warrant.

{¶16} On February 20, 2014, the trial court granted the summary judgment motions filed by the defendants and denied Henderson's motion for summary judgment.

{¶17} Henderson now appeals, assigning the following errors for our review, which shall be discussed together where appropriate.

### Assignment of Error One

The Trial Court abused its discretion as a matter of law by granting Appellees' summary judgments pursuant to absolute immunity, where Appellant provided facts and genuine issues to overcome said immunity and should be determined by a trial jury.

### Assignment of Error Two

The Trial Court abused its discretion and committed prejudicial error towards Appellant by granting Appellees' summary judgments pursuant to statutory immunity, where Appellant provided facts and genuine issues to overcome said immunity and should be determined by a trial jury.

### Assignment of Error Three

The trial court committed reversible error by granting Appellees' motion for summary judgment where discovery and discovery disputes were pending.

### Assignment of Error Four

The trial court committed prejudicial error by denying Appellants' summary judgment for Malicious Prosecution.

### Assignment of Error Five

The trial court committed prejudicial error by denying Appellants' summary judgment for False Arrest and False Imprisonment.

### Assignment of Error Six

The trial court committed prejudicial error by denying Appellants' summary judgment for Fraud.

### Assignment of Error Seven

The trial court abused its discretion and committed prejudical error by depriving appellant of his Due Process, Equal Protection, and 6th Amendment Rights to a trial by jury.

## I. Standard of Review

{¶18} A reviewing court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241; *Mitnaul v. Fairmount Presbyterian Church*, 149 Ohio App.3d 769, 2002-Ohio-5833, 778 N.E.2d 1093 (8th Dist.).   Therefore, this court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the nonmoving party and resolving any doubt in favor of the nonmoving party.   *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12, 467 N.E.2d 1378 (6th Dist.1983).

{¶19} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶20} Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), the nonmoving party must set forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial.   *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449, 1996-Ohio-211, 663 N.E.2d 639.

## II. Absolute Immunity

{¶21} For his first assignment of error, Henderson maintains that the trial court erred insofar as it determined that the judge and prosecutor are entitled to absolute immunity.

A. Euclid Municipal Judge

{¶22} It is well established that judges are entitled to judicial immunity from suits arising out of the performance of their judicial functions. *Pierson v. Ray*, 386 U.S. 547, 553-54, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Mann v. Conlin*, 22 F.3d 100, 103 (6th Cir.1994) (A judge performing his or her judicial functions is entitled to immunity from a suit seeking monetary damages.). In addition, the Supreme Court has specifically held that state judges are absolutely immune from liability under 42 U.S.C. 1983. *Briscoe v. LaHue*, 460 U.S. 325, 334, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

{¶23} Judicial immunity extends even to acts that are alleged to have been performed maliciously, corruptly, in bad faith, or with malice. *Pierson* at 554; *Mireles v. Waco*, 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). However, judicial immunity does not apply if the judge's activities were "non-judicial" in nature or if the judge's actions are performed without any jurisdiction to do so. *Id.*

{¶24} Henderson maintains that the judge was without jurisdiction because the information provided to her contained false information about the title of the vehicle. Assuming without deciding that false information was provided, we note that it was provided to her in her official capacity and her role as a municipal court judge, so she retains absolute immunity. *Clark v. Eskridge*, 77 Ohio App.3d 524, 527-528, 602 N.E.2d 1228 (11th Dist.1991), citing *Freeze v. Griffith*, 849 F.2d 172 (5th Dist.1988); *Demoran v. Witt*, 781 F.2d 155 (9th Dist.1986); *Hughes v. Chesser*, 731 F.2d 1489 (11th Dist.1984); *Turner v. Barry*, 856 F.2d 1539 (D.C. Cir.1988).

**{¶25}** In this matter, there is absolutely no evidence that the judge's actions were "non-judicial" in nature or the judge's actions were performed without any jurisdiction to do so. The trial court therefore properly awarded her summary judgment herein.

### B. Prosecuting Attorney

**{¶26}** Where a prosecuting attorney's actions are an "integral part of the judicial process" or are "intimately associated with the judicial process," he or she is entitled to absolute immunity. *Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir.2010), citing *Burns v. Reed*, 500 U.S. 478, 486, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). This includes absolute immunity from liability under 42 U.S.C. 1983 for their conduct in initiating a prosecution, *Koubriti*, and includes suits for malicious prosecution. *Burns* at 484.

**{¶27}** The *Burns* court also specifically concluded that absolute immunity extended to the prosecuting attorney's participation in a probable cause hearing, including his or her examination of a witness in support of an application for a search warrant, as well as his or her participation in grand jury hearings. *Id.*

**{¶28}** In accordance with the foregoing, the record establishes that the prosecutor's role in this matter involved review of Allamby's allegations, review of the evidence of record, and the swearing of the criminal complaint. Therefore, the trial court properly held that the prosecutor is entitled to absolute immunity.

**{¶29}** By application of the foregoing, the trial court properly determined that the judge and prosecutor are entitled to judgment as a matter of law. The first assignment of error is accordingly without merit.

### III. Discovery

{¶30} In his third assignment of error, Henderson argues that the trial court erred in awarding defendants summary judgment because there were pending discovery requests and disputes over compliance.

{¶31} We note that appellate courts generally apply the abuse of discretion standard when reviewing discovery rulings. *State ex rel. Sawyer v. Cuyahoga Cty. Dept. of Children & Family Servs.*, 110 Ohio St.3d 343, 2006-Ohio-4574, 853 N.E.2d 657, ¶ 9. In addition, when a party asserts that he or she cannot respond to a summary judgment motion before adequate discovery is completed, the proper remedy is to move the trial court to delay judgment under Civ.R. 56(F).

{¶32} In this matter, Henderson filed a motion for a continuance pursuant to Civ.R. 56(F). Thereafter, substantial discovery was provided and Henderson submitted briefs in opposition to defendants' motions for summary judgment and also filed his own motions for summary judgement. In light of these filings, the trial court ruled that the motion for a continuance for discovery was moot. We concur with the determination that Henderson's completion of these various briefs, and the extensive record of discovery rendered his motion for additional time moot. We find no abuse of discretion.

{¶33} The third assignment of error is without merit.

IV. Malicious Prosecution

{¶34} In his fourth assignment of error, Henderson argues that the trial court erred in awarding defendants summary judgment on his claim for malicious prosecution.

A. Malicious Prosecution under Section 1983

{¶35} To succeed on a malicious prosecution claim under 42 U.S.C. 1983, when the claim is premised on a violation of the Fourth Amendment, a plaintiff must prove three elements. First, the plaintiff must show that a criminal prosecution was initiated against him and that the

defendant made, influenced, or participated in the decision to prosecute. *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir.2007); *McKinley v. Mansfield*, 404 F.3d 418, 444 (6th Cir.2005). Second, the plaintiff must show that there was a lack of probable cause for the criminal prosecution. *Fox* at 237. Third, the plaintiff must show that, as a consequence of a legal proceeding, he suffered a deprivation of liberty, apart from the initial seizure. *Gregory v. Louisville*, 444 F.3d 725, 748-50 (6th Cir.2006).

## 1. Police

**{¶36}** In this matter, Henderson asserted that the police lacked probable cause to arrest him because his mother had a lawful right of possession of the Caravan.

**{¶37}** The Supreme Court has defined "probable cause" as the

> facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.

*Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979).

**{¶38}** Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion. *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir.1993); *United States v. McClain*, 444 F.3d 556, 562 (6th Cir.2005). In this regard, a law enforcement officer is entitled to rely on an eyewitness's statements because this comports with the general notion that an eyewitness's statements are based on firsthand observations, and are generally entitled to a presumption of reliability and veracity. *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir.1999). An eyewitness's statements may not be relied upon however, where at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was

lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollections. *Id.*

{¶39} Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence that may exculpate the accused. *Id.*, citing *Schertz v. Waupaca Cty.*, 875 F.2d 578, 583 (7th Cir.1989), and *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir.1988). In fact, law enforcement is under no obligation to give any credence to a suspect's story or alibi, nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause. *Criss*; *Ahlers*. Officers may not, however, turn a blind eye toward potentially exculpatory evidence known to them in an effort to pin a crime on someone. *Ahlers* at 372.

{¶40} To determine whether the Euclid police officers had probable cause to arrest Henderson, we must consider whether the facts and circumstances within the knowledge of the officers were sufficient to warrant a prudent person in believing that the suspect has committed an offense. Having conducted our de novo review, we agree with the trial court's determination that the officers did act with probable cause.

{¶41} A review of the record reveals that on November 23, 2010, Allamby reported to police that Henderson had her car since March or April of that year and refused to return it. Officer Williams took the report, which was designated as "Unauthorized Use of A Motor Vehicle." Officer Williams then left a message for Henderson stating that if he does not return the vehicle to Allamby it may be entered as a stolen vehicle. Allamby "contacted the city prosecutor to upgrade her report to a stolen auto." She appeared at the police station, was sworn according to law, and signed a document that set forth she understood the consequences of her

actions and signed an affidavit accusing Henderson of theft of the vehicle pursuant to R.C. 2913.02(A)(2).

**{¶42}** The Euclid police prepared a supplemental report on December 14, 2010, acknowledging that "the report was originally an unauthorized use complaint," and that "[a]fter conferring with the city prosecutor it was upgraded to a stolen auto." An assistant county prosecutor signed a criminal complaint against Henderson for theft of the motor vehicle pursuant to R.C. 2913.02(A)(2).

**{¶43}** While Sergeant Houser did conduct an investigation that confirmed the vehicle was titled to Brown in the summer 2010, he also determined that Henderson was the notary who witnessed the title transfer to Brown. Sergeant Houser also spoke with Allamby again, and she averred that the title had been forged. She first learned of the forgery in February of 2011, which is when she made the police report. Sergeant Houser could not initially locate this report, but then found it immediately following Henderson's arrest. In this report, dated April 30, 2011, Allamby went to Euclid police headquarters and alleged that "Henderson forged her name on her vehicle's title, notarized the title himself, and then had the title registered in his mother's name." Thus, the evidence in this matter suggests that Henderson's claim of ownership was itself unlawful because Allamby repeatedly insisted and averred that Henderson's claim of ownership was derived through fraudulent transfer of the title.

**{¶44}** Based on the foregoing, we find that the officers acted with probable cause. As a result, Henderson's claim for malicious prosecution under 42 U.S.C. 1983 fails as a matter of law.

2. Police Supervisors

**{¶45}** In order for supervisory liability to attach under Section 1983, the supervisors must have actively engaged in unconstitutional behavior, beyond a mere failure to act. *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir.1999). The supervisors must have encouraged or condoned the actions of their employees. *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir.1995).

**{¶46}** In this matter, the record indicates that the police supervisor reviewed the case in order to set forth for the record how the matter that the police officers initially listed as "Unauthorized Use of a Motor Vehicle," had now become "upgraded to a stolen auto" after Allamby met with the city prosecutor. There was no evidence that they engaged in unconstitutional behavior, or encouraged or condoned unconstitutional behavior. The trial court properly held that they are entitled to judgment as a matter of law.

### 3. City of Euclid

**{¶47}** The United States Supreme Court has held that municipalities may be held liable under 42 U.S.C. 1983 when the injury inflicted is a result of "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The court stated that "a municipality cannot be held liable solely because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under 42 U.S.C. 1983 on a respondeat superior theory." *Id*. at 691. There must be a direct causal link between the policy and the alleged constitutional violation such that the municipality's deliberate conduct can be deemed the moving force behind the violation. *Graham ex rel. Estate of Graham v. Cty. of Washtenaw,* 358 F.3d 377, 383 (6th Cir.2004).

**{¶48}** In this matter, there has been no evidence of a governmental policy or custom, whether made by its lawmakers or other policy makers that led to the prosecution at issue. Therefore, the trial court properly awarded summary judgment to Euclid.

### B. Malicious Prosecution Under State Law

**{¶49}** Under Ohio law, the elements of malicious prosecution are: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Trussell v. Gen. Motors Corp.*, 53 Ohio St.3d 142, 559 N.E.2d 732 (1990).

**{¶50}** In this matter, because there was probable cause for Henderson's arrest and prosecution, the claim for malicious prosecution law is without merit as a matter of law. Therefore, the trial court properly entered judgment for defendants on this claim.

**{¶51}** The fourth assignment of error is without merit.

### V. False Arrest and False Imprisonment

**{¶52}** In his fifth assignment of error, Henderson argues that the trial court erred in awarding defendants summary judgment on his claim for false arrest and false imprisonment.

### A. False Arrest and False Imprisonment Under Section 1983

**{¶53}** The Fourth Amendment to the U.S. Constitution protects against unreasonable searches and seizures and requires that arrest warrants be issued only upon a showing of probable cause. In order to assert a claim of false arrest in violation of the Fourth Amendment, a plaintiff must prove that the arresting officer lacked probable cause to arrest the plaintiff; but an arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to 42 U.S.C. 1983. *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 (6th Cir.2005). Further, "it has been long settled that

the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause." *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir.2006).

**{¶54}** After conducting our de novo review and for all of the reasons previously set forth, we conclude that the trial court properly held that the officers had probable cause to arrest Henderson. Further, there was no evidence of improper influence or misrepresentation before the grand jury. Additionally, following its receipt of the state's evidence at Henderson's criminal trial, the common pleas court denied the motion for acquittal under Crim.R. 29, and denied it again at the close of all of the evidence. Therefore, the trial court properly awarded defendants summary judgment on the false arrest and false imprisonment claims.

### B.   False Arrest and False Imprisonment Under State Law

**{¶55}** Under Ohio law, an action for false arrest includes false imprisonment. *Mayes v. Columbus*, 105 Ohio App.3d 728, 746, 664 N.E.2d 1340 (10th Dist.1995). In order to prevail on a claim for false arrest or imprisonment, the plaintiff must demonstrate: "(1) the intentional detention of the person and (2) the unlawfulness of the detention." *Hodges v. Meijer, Inc.*, 129 Ohio App.3d 318, 717 N.E.2d 806 (12th Dist.1998). Thus, an arrest based on probable cause is a lawful detention and, thereby, serves to defeat both a claim of false arrest and a claim of false imprisonment.

**{¶56}** Having determined that the trial court properly concluded that the defendants acted with probable cause in charging Henderson with grand theft, receiving stolen property, and forgery, we also find that it properly awarded defendants summary judgment on Henderson's claims for false arrest and false imprisonment.

**{¶57}** For all of the foregoing reasons, the fifth assignment of error lacks merit.

## VI. Statutory Immunity

**{¶58}** In his second assignment of error, Henderson maintains the trial court erred insofar as it concluded that defendants were entitled to statutory immunity.

**{¶59}** R.C. Chapter 2744 sets forth a three-tiered analysis for determining whether a political subdivision is immune from liability for injury or loss to property. *See Rankin v. Cuyahoga Cty. Dept. of Children & Family Serv.*, 118 Ohio St.3d 392, 2008-Ohio-2567, 889 N.E.2d 521, ¶ 8. The first tier of the analysis provides that political subdivisions are generally not liable in damages for causing personal injuries under R.C. 2744.02(A)(1), which provides that:

> (A)(1) For the purposes of this chapter, the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death or loss to person or property allegedly caused by an act or omission of the political subdivision in connection with a governmental or proprietary function.

**{¶60}** Once immunity is established, the second tier of the analysis asks whether any of the five exceptions to immunity set forth in R.C. 2744.02(B) apply. These exceptions occur when: (1) the injuries are caused by the negligent operation of a motor vehicle; (2) the injuries are caused by the negligent performance of a proprietary function; (3) the injuries are caused by the failure to keep public roads, highways and streets open, in repair and free from nuisance; (4) the injuries are caused by negligence on the grounds of a building used for governmental purposes; or (5) the injuries are those for which liability is expressly imposed by the Ohio Revised Code.

**{¶61}** If any of the exceptions are applicable, then, under the third tier in the analysis, the political subdivision has the burden of demonstrating that any of the defenses set forth in R.C. 2744.03 apply. *Rankin* at 396.

**{¶62}** In applying the foregoing, we note that courts have generally held that because R.C. 2744.02(B) includes no specific exceptions for intentional torts, political subdivisions are immune from intentional tort claims. *See Thornton v. Cleveland,* 176 Ohio App.3d 122, 2008-Ohio-1709, 890 N.E.2d 353 (8th Dist.); *Young v. Genie Indus. United States*, 8th Dist. Cuyahoga No. 89665, 2008-Ohio-929; *Havely v. Franklin Cty.*, 10th Dist. Franklin No. 07AP-1077, 2008-Ohio-4889. *See also Maggio v. Warren*, 11th Dist. Trumbull No. 2006-T-0028, 2006-Ohio-6880 (immunity for assault, battery, false arrest, malicious prosecution, and intentional and negligent infliction of emotional distress claims).

**{¶63}** As to the individual officers, employees of a political subdivision may also be entitled to immunity under R.C. 2744.03(A)(6). As the Ohio Supreme Court has explained:

> R.C. 2744.03(A)(6) states that an employee is immune from liability unless the employee's actions or omissions are manifestly outside the scope of employment or the employee's official responsibilities; the employee's acts or omissions were malicious, in bad faith, or wanton or reckless; or liability is expressly imposed upon the employee by a section of the Revised Code.

*Id.* at 398.

**{¶64}** In the instant case, we agree with the trial court's determination that defendants are entitled to immunity from Henderson's claims because there is no evidence that they acted maliciously, in bad faith, wantonly, or recklessly. Henderson insists that this matter is analogous to *Knox v. Hetrick*, 8th Dist. Cuyahoga No. 91102, 2009-Ohio-1359, and that there are jury questions as to whether the officers acted outside of their immunity. In *Knox*, however, this court noted the officer's derogatory language toward the plaintiffs and that his version of events

was challenged by witnesses. *Knox* is therefore inapposite. Henderson also insists that the investigation was not thorough since no handwriting exemplars were obtained to support the allegation that Allamby's title was forged and there was no evidence that defendants acted with the intent to harm her or with any ulterior motive. We find there was neither a complete lack of care nor an intentional deviation from a definite rule of conduct. Therefore, insofar as the trial court determined that defendants are entitled to statutory immunity, we find no prejudicial error.

{¶65} The second assignment of error is without merit.

## VII. Fraud

{¶66} In his sixth and seventh assignments of error, Henderson maintains that the trial court erred in awarding defendants summary judgment on his fraud claim.

{¶67} A claim for fraud requires proof of the following elements:

(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Groob v. KeyBank*, 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170, ¶ 47.

{¶68} The absence of any one of these elements of fraud is fatal to recovery for fraud.

{¶69} In this matter, there has been no evidence that the defendants made a material misrepresentation of fact, falsely and with knowledge of its falsity with the intent of misleading another. Rather, the record indicates that they relied upon the sworn allegations of Allamby and the questionable transfer of title, including the notarization by Henderson.

{¶70} Therefore, we find that the trial court properly awarded defendants summary judgment on the fraud claim.

**{¶71}** The sixth and seventh assignments of error are without merit.

**{¶72}** Judgment is affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

LARRY A. JONES, SR., P.J., and
EILEEN A. GALLAGHER, J., CONCUR