**LAMBERT, Appellant,**

v.

**HARTMANN, Clerk, Appellee.**

[Cite as *Lambert v. Hartmann,* 178 Ohio App.3d 403, 2008-Ohio-4905.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–070600.

Decided Sept. 26, 2008.

</div>

Law Office of Marc Mezibov, Marc Mezibov, and Stacy A. Hinners, for appellant.

Joseph Deters, Hamilton County Prosecuting Attorney, Michael G. Florez, and Pamela J. Sears, Assistant Hamilton County Prosecuting Attorneys, for appellee.

Per Curiam.

{¶ 1} Plaintiff-appellant, Cynthia Lambert, on behalf of herself and others similarly situated, sued defendant-appellee, Greg Hartmann, the Hamilton County clerk of courts, for violations of Ohio's Privacy Act (R.C. Chapter 1347), invasion of privacy, the unlawful publication of private facts, and public nuisance. In her complaint, Lambert alleged that she was harmed when her identity was stolen after the clerk had published her social-security number and other personal, private information on the clerk's public website, despite knowing that identity theft was a probable result. The trial court dismissed Lambert's complaint under Civ.R. 12(B)(6) and (C), without opinion. Lambert now appeals,

asserting in a single assignment of error that the trial court erred by dismissing her complaint. We agree.

{¶ 2} Lambert alleged sufficient facts to survive a Civ.R. 12(B)(6) and (C) motion. The facts alleged, if determined to be true, supported a cause of action for invasion of privacy, public nuisance, and violations of Ohio's Privacy Act. Furthermore, Lambert's claims were not barred by the Political Subdivision Tort Liability Act.

## I. Speeding Ticket Leads to Identity Theft

{¶ 3} The following factual background is based on the allegations in Lambert's complaint. Lambert alleged that in September 2003 she was issued a speeding ticket. The officer issuing the ticket used the Ohio Uniform Traffic Ticket, which included Lambert's name, signature, home address, birth date, driver's license number, and social-security number. The ticket was filed with the Hamilton County Clerk's Office and was then published on the clerk's website.

{¶ 4} Approximately a year after Lambert had received the speeding ticket, she received a call from a Sam's Club store regarding a large purchase made by an individual purporting to be her. Using a driver's license with Lambert's personal identifying information, the individual was able to purchase over $8,000 in electronics. The next day, Lambert received a call from a Home Depot store regarding a credit-card account opened in her name. An individual using a driver's license with Lambert's personal information charged approximately $12,000 in purchases to this account. Lambert learned that the driver's license number used on the identification produced by the individual purporting to be her was wrong by one digit. Lambert found the speeding ticket on the clerk's website and noted that the officer had recorded her driver's license number with one erroneous digit. Subsequently, Lambert learned that the Blue Ash Police had arrested a woman who the police believed had stolen Lambert's identity. The woman who had stolen Lambert's identity pleaded guilty to federal felony charges.

{¶ 5} Lambert alleged that the clerk's office began publishing traffic tickets, without redacting social-security numbers, in February 1999 and continued to do so until December 22, 2004, despite learning in 2002 that identity theft had been committed by using information obtained on the clerk's website, and despite being warned by other county officials in electronic correspondence to the clerk's legal counsel that the clerk's website provided "fertile ground for identity theft."

{¶ 6} Lambert sued the clerk and others in federal court in December 2004, alleging federal constitutional violations as well as pendent state-law claims for violation of her right to privacy under Ohio common law and for publication of private facts under Ohio common law. She later moved to amend her complaint

to add a claim under Ohio's Privacy Act, R.C. Chapter 1347. While this motion was pending, the clerk moved to dismiss Lambert's complaint. The federal court dismissed Lambert's federal claims with prejudice and dismissed Lambert's remaining state claims without prejudice. A month later, Lambert sued the clerk in the Hamilton County Court of Common Pleas.

## II. Standard of Review

{¶ 7} A motion to dismiss for failure to state a claim upon which relief can be granted is procedural in nature and tests the sufficiency of the complaint.[1] "[W]hen a party files a motion to dismiss for failure to state a claim, all the factual allegations of the complaint must be taken as true and all reasonable inferences must be drawn in favor of the nonmoving party."[2] In resolving a Civ.R. 12(B)(6) motion, courts are confined to the allegations in the complaint and cannot consider outside materials.[3]

{¶ 8} For a court to grant a motion to dismiss for failure to state a claim, it must appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[4] As long as there is a set of facts consistent with the plaintiff's complaint that would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.[5] Finally, an appellate court's review of a trial court's ruling on a motion to dismiss is de novo.[6]

{¶ 9} Under Civ.R. 12(C), a court may grant judgment on the pleadings when no material issue of fact exists and the moving party is entitled to judgment as a matter of law. As with a motion under Civ.R. 12(B)(6), the court may consider only the allegations in the pleadings. It must construe all material allegations in the complaint, along with all reasonable inferences, as true and in favor of the nonmoving party. We review the trial court's entry of judgment on the pleadings de novo.[7]

---

1. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.* (1992), 65 Ohio St.3d 545, 548, 605 N.E.2d 378.

2. *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 60, 565 N.E.2d 584.

3. *State ex rel. Baran v. Fuerst* (1990), 55 Ohio St.3d 94, 563 N.E.2d 713.

4. *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 245, 71 O.O.2d 223, 327 N.E.2d 753.

5. *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 418, 2002-Ohio-2480, 768 N.E.2d 1136.

6. *Byrd*, supra.

7. *State ex rel. Pirman v. Money* (1994), 69 Ohio St.3d 591, 592–593, 635 N.E.2d 26; *Mayfield Clinic, Inc. v. Fry*, 1st Dist. No. C–030885, 2004-Ohio-3325, 2004 WL 1415560, ¶ 6.

### III. Political Subdivision Tort Liability Act

{¶ 10} The clerk maintains that the trial court properly dismissed all of Lambert's claims because he was immune from liability under R.C. Chapter 2744. The clerk may well be immune from liability, but that is unclear from the state of the pleadings, as Lambert sufficiently alleged facts that, if true, provided an exception to that immunity.

{¶ 11} Generally, political subdivisions are granted immunity from suit under R.C. 2744.02 for governmental or proprietary functions. But the immunity granted under the statute does not apply to elected officials or individual employees of a political subdivision.[8] Because the clerk is an "employee" of a political subdivision and an elected official,[9] our analysis of the immunity issue begins with R.C. 2744.03(A)(6).[10]

{¶ 12} R.C. 2744.03(A)(6) creates a presumption of immunity for employees and elected officials of a political subdivision. It provides that an individual employee is immune from liability in performing his job unless (1) his acts or omissions are manifestly outside the scope of his employment; (2) his acts or omissions are malicious, in bad faith, or wanton or reckless; or (3) liability is expressly imposed upon the employee by another statute.

{¶ 13} In her complaint, Lambert alleged that the clerk had acted "recklessly, willfully, and purposefully" in publishing Lambert's personal and private information and many others' personal and private information on his public website. Lambert also alleged that the clerk was aware as early as 2002 that his website was being used to facilitate identity theft and was repeatedly warned about this particular risk of harm in 2003. These allegations, if true, state a possible exception to the immunity granted to elected officials and employees of a political subdivision. Accordingly, we are constrained to hold that if the trial court dismissed Lambert's claims because it believed that the clerk had immunity, the trial court erred.

{¶ 14} We briefly note that the clerk refers to evidence outside the pleadings to argue that Lambert knew that the clerk's actions were not reckless, wanton, or willful. While this evidence may be persuasive, we cannot consider it. Again, in reviewing a motion to dismiss, we cannot consider evidence outside the pleadings, and we must presume that the allegations in the complaint are true.

---

8. *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9, at ¶ 17; see also *Thorp v. Strigari*, 155 Ohio App.3d 245, 256, 2003-Ohio-5954, 800 N.E.2d 392.

9. R.C. 2744.01(B).

10. *Thorp*, supra, at ¶ 31.

### IV. Ohio's Privacy Act as Codified in R.C. Chapter 1347

{¶ 15} Lambert argues that she adequately pleaded a cause of action under Ohio's Privacy Act. We agree.

{¶ 16} R.C. Chapter 1347 sets forth requirements that "local agencies" must follow in collecting and maintaining personal information. For example, local agencies must "[t]ake reasonable precautions to protect personal information in the system from unauthorized modification, destruction, use, or disclosure."[11] The statutory definition of "local agency" includes "any elected officer * * * of a county."[12] Accordingly, Hartmann, as the clerk of courts, is subject to R.C. Chapter 1347.[13]

{¶ 17} R.C. 1347.10 provides the following:

{¶ 18} "(A) A person who is harmed by the use of personal information that relates to him and that is maintained in a personal information system may recover damages in a civil action from any person who directly and proximately caused the harm by doing any of the following:

{¶ 19} "(1) Intentionally maintaining personal information that he knows, or has reason to know, is inaccurate, irrelevant, no longer timely, or incomplete and may result in such harm;

{¶ 20} "(2) Intentionally using or disclosing the personal information in a manner prohibited by law;

{¶ 21} " * * *

{¶ 22} "(B) Any person who, or any state or local agency that, violates or proposes to violate any provision of this chapter may be enjoined by any court of competent jurisdiction."

{¶ 23} In her complaint, Lambert alleged that the clerk had maintained an online database of traffic citations that contained personal, private information such as social-security numbers and that the clerk provided unfettered public

---

11. R.C. 1347.05(G).

12. R.C. 1347.01(B).

13. The clerk maintains that he is exempt from R.C. Chapter 1347. He relies on R.C. 1347.04(A)(1)(a), which exempts from the requirements of R.C. Chapter 1347 any state or local agency that performs as its principal function any activity relating to the enforcement of criminal laws. The clerk argues that a traffic ticket is a "criminal complaint" and, thus, that his office engages in some activity related to law enforcement. But for an agency to be exempt, law enforcement must be the agency's principal function. See *Patrolman "X" v. Toledo* (1999), 132 Ohio App.3d 374, 390, 725 N.E.2d 291. Because law enforcement is not the principal function of the county clerk's office, the clerk is subject to R.C. Chapter 1347. See R.C. 2303.08 and 2303.09.

online access to this information even after learning that the database was being used to facilitate identity theft. Lambert also alleged that as a direct and proximate result of the publication of her social-security number on the clerk's website, "she [had] suffered serious and significant emotional distress, anxiety, disruption of her personal affairs, loss of time and actual expense." She also alleged that the clerk had failed to eliminate information such as social-security numbers that were irrelevant to the function of the clerk's office. Construing the facts as true, we hold that Lambert's allegations were sufficient to state a cause of action under Ohio's Privacy Act.[14]

{¶ 24} Hartmann argues that the only possible claim that Lambert could have would be one under R.C. 1347.10(A)(2), which prohibits the clerk from "intentionally using or disclosing personal information in a manner prohibited by law." Hartmann argues that at the time of the publication of Lambert's traffic ticket, there was no law that prevented or limited the dissemination of Lambert's ticket. Hartmann is correct. There was no law in place preventing the dissemination of Lambert's traffic ticket as a public record, but there was arguably law in place that required that Lambert's social-security number be redacted prior to publishing the traffic ticket.[15] Furthermore, as we noted earlier, the clerk had a duty to prevent personal, private information from being misused.[16] The allegations in Lambert's complaint, if true, sufficiently pleaded a cause of action under R.C. Chapter 1347.

{¶ 25} Last, the clerk argues that Lambert's claim under R.C. Chapter 1347 was properly dismissed because it was filed after the two-year limitations period had run.[17] Lambert maintains that her claim under R.C. Chapter 1347 related back, under Civ.R. 15(C), to the time that she had filed her original complaint in federal court. The clerk argues that Lambert's motion to amend

---

14. See *State ex rel. McCleary v. Roberts* (2000), 88 Ohio St.3d 365, 367, 725 N.E.2d 1144.

15. See *State ex rel. Beacon Journal Publishing Co. v. Akron* (1994), 70 Ohio St.3d 605, 640 N.E.2d 164 (holding that city employees had a legitimate expectation of privacy in their social-security numbers and that they were not subject to mandatory disclosure under Ohio's Public Records Act); *State ex rel. Wadd v. Cleveland* (1998), 81 Ohio St.3d 50, 53, 689 N.E.2d 25 ("there is nothing to suggest that Wadd would not be entitled to public access of the preliminary, unnumbered accident reports following prompt redaction of exempt information such as Social Security numbers").

16. See *State ex rel. McCleary v. Roberts* (2000), 88 Ohio St.3d 365, 367, 725 N.E.2d 1144, citing *State ex rel. Fant v. Enright* (1993), 66 Ohio St.3d 186, 188, 610 N.E.2d 997 ("To the extent that an item is not a public record and is 'personal information,' as defined in R.C. 1347.01(E), a public office 'would be under an affirmative duty, pursuant to R.C. 1347.05(G), to prevent its disclosure' ").

17. R.C. 1347.01(E).

her complaint to add a claim under R.C. Chapter 1347 was never granted by the federal court before it dismissed Lambert's complaint. But this is not accurate.

{¶ 26} We hold that Lambert's motion to amend her complaint to add a claim under R.C. Chapter 1347 was implicitly granted by the federal district court when the court's decision specifically mentioned "[Lambert's] proposed claim" under Ohio's Privacy Act and then stated that "the Court has supplemental jurisdiction over these state law claims. * * *." Accordingly, Lambert's claim was timely filed because it related back to her original lawsuit filed in federal court.[18]

## V. Invasion of Privacy: Publication of a Private Fact

{¶ 27} To establish a claim for invasion of privacy, specifically the publication of private facts, a plaintiff must allege (1) a private fact, (2) a public disclosure of that private fact, and (3) that the fact made public is one that would be highly offensive and objectionable to a reasonable person.[19] Upon review of the complaint, we hold that Lambert sufficiently pleaded a claim for invasion of privacy. Lambert alleged in her complaint that the clerk had published her private information on a public website and that this had caused her harm. The clerk argues that Lambert's traffic ticket was a public record and thus that its publication could not, as a matter of law, have constituted the tort of publication of private facts. But the Ohio Supreme Court has held that public-records custodians should redact social-security numbers from otherwise public records before disclosing them under R.C. 149.43.[20]

## VI. Public Nuisance

{¶ 28} A public nuisance involves the invasion of public rights that are common to all members of the public. Generally, public nuisances are subject to abatement only by the state or by individuals who can " 'show particular harm of a kind different from that suffered by the general public.' "[21] Here, Lambert alleged that the clerk had knowingly, willfully, and recklessly continued to publish

---

**18.** See *Osborne v. AK Steel/Armco Steel Co.*, 96 Ohio St.3d 368, 370, 2002-Ohio-4846, 775 N.E.2d 483.

**19.** *Greenwood v. Taft, Stettinius & Hollister* (1995), 105 Ohio App.3d 295, 303, 663 N.E.2d 1030.

**20.** *State ex rel. Office of Montgomery Cty. Public Defender v. Siroki,* 108 Ohio St.3d 207, 2006-Ohio-662, 842 N.E.2d 508, at ¶ 18, citing *Wadd,* supra.

**21.** *Kenwood Plaza Ltd. Partnership v. Stephens* (Aug. 1, 1997), 1st Dist. No. C–961106, 1997 WL 33825949, *2, quoting *Korfel v. Partridge Hous. Corp.* (Aug. 31, 1995), Cuyahoga App. No. 68030, 1995 WL 517080, *4.

the personal information of thousands of individuals on the Internet, despite being aware of the risk of harm that was created by the publication. Lambert also alleged that this practice had infringed upon several rights common to the general public, including an invasion of privacy, and that she had suffered special, actual harm in the form of identity theft as a result. Construing these allegations as true, as we are required to do for a motion to dismiss, we hold that Lambert sufficiently pleaded a claim for public nuisance.

### VII. Lis Alibi Pendens

{¶ 29} The clerk also argues that the trial court lacked subject-matter jurisdiction to hear Lambert's causes of action under the doctrine of lis alibi pendens. This doctrine is "a preliminary defense that a case involving the same parties and the same subject is pending in another court." [22] Essentially, the clerk contends that because Lambert had originally filed her complaint in federal court and has appealed the dismissal of her federal case (including possibly her state claims, although this is unclear), Lambert should have been prevented from asserting her state claims in state court. We disagree. Lambert's state claims were dismissed without prejudice. If Lambert prevails in her federal appeal and her state claims are revived in federal court, the clerk may raise the issue of lis alibi pendens in the federal action to prevent the district court from hearing the state claims.

### VIII. Conclusion

{¶ 30} Based on the foregoing, we sustain Lambert's assignment of error. This court, like the trial court, is bound by law to treat as true all the *allegations* of the complaint and draw all reasonable inferences on behalf of Lambert. Because of this high legal standard, the allegations in the complaint live for another day.

{¶ 31} Accordingly, we reverse the judgment of the trial court and remand this case for further proceedings consistent with the law and this decision.

Judgment reversed
and cause remanded.

HILDEBRANDT, P.J., PAINTER and DINKELACKER, JJ., concur.

---

22. Black's Law Dictionary (8th Ed.2004) 950.