[Cite as *McKee v. McCann*, 2017-Ohio-4072.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 104956

---

# EDWARD MCKEE

### PLAINTIFF-APPELLANT

vs.

# SHAUNA MCCANN, ET AL.

### DEFENDANTS-APPELLEES

---

## JUDGMENT:
## AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-16-861930

**BEFORE:** Stewart, J., E.A. Gallagher, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** June 1, 2017

**FOR APPELLANT**

Edward McKee, pro se
5838 Darry Circle
Norcross, GA 30093


**ATTORNEYS FOR APPELLEES**

Michael E. Cicero
Vincent A. Feudo
Nicola Gudbranson & Cooper, L.L.C.
Republic Building, Suite 1400
25 West Prospect Avenue
Cleveland, OH 44115

MELODY J. STEWART, J.:

{¶1} As plaintiff-appellant Edward McKee was leaving a Walmart store, he chose to exit the store and bypass a line of customers who were having their purchases verified by a receipt. A Walmart employee asked McKee to produce a receipt, but McKee refused and exited the store. An off-duty South Euclid police officer working as a security guard for Walmart followed McKee to the parking lot, stopped him, and instructed him to produce his receipt. Maintaining that he had no legal obligation to do so, McKee again refused to show his receipt. The security guard called for police assistance. Two officers responded and ordered McKee to show identification. He refused, causing the officers to place him under arrest. McKee then relented and showed the police his identification and receipt, at which point they released him without charge. In response to McKee's citizen complaint about the incident, the police sought an opinion from the city law director, who concluded that the police officers acted appropriately by detaining McKee when he failed to identify himself while being held on suspicion of shoplifting.

{¶2} McKee brought this action against defendants Brian Shamblin and Patrick Delahanty (the police officers who responded to Walmart); James Wilson (a police lieutenant who wrote an internal report about the incident); Kevin Nietert (the chief of police who asked the law director for a legal opinion on the conduct of the officers); Michael Lograsso (the city law director); and the city of South Euclid ("city").[1] McKee asserted the following claims:

1. Unlawful Detention: McCann and South Euclid
2. Negligence: McCann and South Euclid
3. Intentional Infliction of Emotional Distress: Shamblin and South Euclid
4: Assault and Battery: Shamblin and South Euclid
5. False Arrest: Shamblin and South Euclid
6. Fraudulent Inducement in Verbal Contract: Shamblin and South Euclid
7. Fraudulent Misrepresentation: Shamblin and South Euclid
8. Defamation: McCann, Shamblin, and South Euclid
9. Invasion of Privacy: McCann, Shamblin, Delahanty, and South Euclid
10. Libel: Wilson, Nietert, Lograsso, and South Euclid
11. Respondeat Superior: South Euclid
12. Ratification: Wilson, Nietert, Lograsso, and South Euclid

{¶3} The city, on behalf of itself, Shamblin, Delahanty, Wilson, Nietert, and Lograsso, filed a motion to dismiss the complaint. It argued that it was immune from liability for the negligence, intentional tort, and respondeat superior claims under R.C. 2744.02. It also argued that claims against the individual defendants were barred by qualified privileges that protected them in the performance of their job duties.

---

[1] McKee also named as defendants Shauna McCann (the security guard); "Loss Prevention Guys 1 & 2" (Walmart employees); Security Hut, Inc.; and Walmart Stores, Inc. These defendants are not parties to this appeal.

{¶4} The court granted the motion to dismiss over McKee's opposition, finding both that the defendants were "statutorily immune to plaintiff's specific claims" and that McKee "cannot prove any facts to support his claims against these defendants that would entitle him to relief."

## I. Claims against Shamblin and Delahanty

{¶5} The first assignment of error contests the dismissal in favor of defendants Shamblin and Delahanty, the city police officers who responded to the Walmart parking lot.

### A. Intentional Infliction of Emotional Distress

{¶6} The third cause of action alleged that "Shamblin's treatment of the situation, including yelling and moving towards Plaintiff with eyes wide as if he were shocked by a serious crime Plaintiff had committed, was completely out of line with the seriousness of the alleged offense." McKee maintained that Shamblin's "aggressive, combative behavior" caused him to "fear for his safety" and scared him into complying with Walmart's policy to check the receipts of its exiting customers.

**{¶7}** Civ.R. 12(B)(6) states that a complaint is not subject to dismissal for failure to state a claim upon which relief may be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle the plaintiff to relief. *Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶ 11, citing *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975). Therefore, "[a]s long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss." *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145, 573 N.E.2d 1063 (1991).

**{¶8}** Employees of a political subdivision may be entitled to immunity under R.C. 2744.03(A)(6). That section states that

> an employee is immune from liability unless the employee's actions or omissions are manifestly outside the scope of employment or the employee's official responsibilities; the employee's acts or omissions were malicious, in bad faith, or wanton or reckless; or liability is expressly imposed upon the employee by a section of the Revised Code.

*Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9, ¶ 17.

**{¶9}** McKee incorrectly alleged that Shamblin was acting outside the scope of his employment because he was "enforcing the policy of a private business and/or his personal opinion about merchants' rights, instead of the law of the state of Ohio[.]" Complaint at ¶ 207. The complaint alleged that McKee had been detained on suspicion of shoplifting. Complaint at ¶ 189. While the loss of merchandise affects a merchant, shoplifting is another word for "theft" — a criminal offense under R.C. 2913.02(A). "[I]n Ohio the state has a direct interest in all crimes" such that "all crimes are prosecuted in the name of the people, not the victim[.]" *State v. Powell*, 8th Dist. Cuyahoga No. 99386, 2014-Ohio-2048, ¶ 64. To the extent that Shamblin was investigating a potential criminal offense, he was acting within the scope of his employment as a police officer. *State v. Hoop*, 12th Dist. Brown No. CA2011-07-015, 2012-Ohio-992, ¶ 25.

**{¶10}** We likewise find that McKee failed to state a cause of action for intentional infliction of emotional distress.

**{¶11}** To establish a claim for intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) the defendant intended to cause, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure. *Ashcroft v. Mt. Sinai Med. Ctr.*, 68 Ohio App.3d 359, 366, 588 N.E.2d 280 (8th Dist.1990).

**{¶12}** This is not the "rare case that reaches the very high bar of showing 'extreme and outrageous' conduct." *Lombardo v. Mahoney*, 8th Dist. Cuyahoga No. 92608, 2009-Ohio-5826, ¶ 7.

> It is not enough that the defendant acted with intent to cause emotional distress. Liability will be found only where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

*Marconi v. Savage*, 8th Dist. Cuyahoga No. 99163, 2013-Ohio-3805, ¶ 29, quoting *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374, 453 N.E.2d 666 (1983).

{¶13} McKee alleged only that Shamblin yelled and moved toward him with "eyes wide." This is not conduct so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community. As a police officer investigating a possible crime, Shamblin had wide latitude to take control of the scene. Shamblin's act of raising his voice was not outrageous, even if McKee found it offensive.

## B. Assault and Battery; False Arrest

{¶14} The fourth cause of action alleged that Shamblin committed assault and battery by making "aggressive movements" and touching and physically restraining McKee.

{¶15} "A person is subject to liability for battery when he acts intending to cause_a harmful or offensive contact, and when a harmful contact results." *Love v. Port Clinton*, 37 Ohio St.3d 98, 99, 524 N.E.2d 166 (1988), citing Restatement of the Law 2d, Torts, Section 13, at 25 (1965).

{¶16} We recognize that for purposes of Civ.R. 12(B)(6), affirmative defenses typically involve facts outside the complaint. An exception to this general rule exists when the affirmative defense is obvious from the face of the complaint. *Hughes v. Robinson Mem. Portage Cty. Hosp.*, 16 Ohio App.3d 80, 82, 474 N.E.2d 638 (11th Dist.1984); *Bell v. Horton*, 107 Ohio App.3d 824, 826-827, 669 N.E.2d 546 (4th Dist.1995).

**{¶17}** The battery allegations involve Shamblin's act of handcuffing McKee. *See* complaint at ¶ 175. "Officers are privileged to commit battery when making a lawful arrest, but the privilege is negated by the use of excessive force." *Alley v. Bettencourt*, 134 Ohio App.3d 303, 313, 730 N.E.2d 1067 (4th Dist.1999). The battery count contains no allegation that Shamblin used excessive force when he handcuffed McKee — the complaint alleged only that the act of handcuffing McKee constituted a battery. Shamblin was privileged when making the arrest and the court properly dismissed this claim.

**{¶18}** For the same reasons, the court properly dismissed the false arrest claim pleaded in the fifth cause of action. That cause of action alleged that Shamblin wrongly placed McKee under arrest because he had no probable cause, reasonable suspicion, or any other type of cause to believe that McKee committed a violation of R.C. 2921.29(A) — failing to disclose to a law enforcement officer the person's name, address, or date of birth when the law enforcement officer reasonably suspects that the person is committing or has committed a criminal offense.

**{¶19}** "A false arrest and false imprisonment claim is made by establishing two elements: 1) the intentional detention of the person; and, 2) the unlawfulness of the detention." *Ficklin v. Home Depot U.S.A., Inc.*, 8th Dist. Cuyahoga No. 94458, 2010-Ohio-5601, ¶ 34. Police officers have a qualified privilege for purposes of a false arrest claim if the officer possessed probable cause to justify an arrest. *Henderson v. Euclid*, 8th Dist. Cuyahoga No. 101149, 2015-Ohio-15, ¶ 55.

**{¶20}** The complaint alleged facts showing that McKee refused to show identification to Shamblin — it stated that when asked if he had identification, McKee pointed to his backpack and, when asked to display the identification, McKee said "no thank you" because "he knew that there was no legal requirement to search his own backpack and provide an ID card to a police officer upon demand." Complaint at ¶ 77. McKee's refusal to show identification was made despite knowing that "Shamblin thinks that a merchant 'has a right to verify' that shoppers haven't committed theft by forcing them to wait in long lines and present their personal property (receipts and recent purchases), for inspection before they are allowed to leave a store." *Id.* at ¶ 73. The complaint thus showed that McKee understood that Shamblin suspected that McKee's refusal to allow store personnel to verify his purchases could have been to hide a potential theft. As it happened, McKee paid for his purchases. But the fact that there was no theft did not mean that Shamblin's initial suspicion that McKee might have been shoplifting was unreasonable. *State v. Andrews*, 57 Ohio St.3d 86, 565 N.E.2d 1271 (1991) (circumstances for determining reasonable suspicion not viewed in hindsight). R.C. 2921.29(A) imposes strict liability for failing to show identification, so Shamblin had a qualified immunity from suit for false arrest.

### C. Fraudulent Inducement into Verbal Contract

**{¶21}** The sixth cause of action alleged that Shamblin placed McKee under arrest for failing to disclose identifying information for the sole purpose of inducing McKee's capitulation to the request to show his identification.

**{¶22}** This aspect of the complaint confused cause and effect: Shamblin placed McKee under arrest because he had probable cause to conclude that the offense of failing to disclose personal information had been committed. The complaint stated as much: McKee told the police that he had identification in his backpack, but refused to produce it, causing Shamblin to say, "so you're not gonna identify yourself," resulting in him placing McKee under arrest. Complaint at ¶ 79-80. That the shock of being placed under arrest caused McKee to finally identify himself did not undermine the fact that the officer had probable cause to arrest before McKee did so. Even with the most liberal construction of these facts in McKee's favor, *Millennia Hous. Mgt. v. Johnson*, 8th Dist. Cuyahoga No. 96854, 2012-Ohio-1044, ¶ 10, they fail to allege a viable cause of action of any kind, much less the one stated here for a breach of oral contract for which there was no mutual assent to any defined terms.

D. Fraudulent Misrepresentation

{¶23} The seventh cause of action alleged that Shamblin fraudulently represented himself as enforcing R.C. 2921.29(A) "when in reality he simply wanted to scare Plaintiff into submission on the receipt issue." Complaint at ¶ 228. We summarily reject McKee's assertion that the court erred by dismissing this cause of action for the same reasons given in our disposition of the sixth cause of action for fraudulent inducement in a verbal contract — the facts alleged by McKee show that Shamblin had probable cause to arrest based on McKee's refusal to give identifying information. In addition, Shamblin had a reasonable basis for suspecting that McKee's refusal to show his receipt was intended to evade potential shoplifting. The arrest was effectuated because McKee failed to provide identifying information, not for the purpose of forcing him to identify himself.

### E. Defamation

{¶24} McKee premised his eighth cause of action on defamation, alleging that "Shamblin's false arrest of Plaintiff, both in a public parking lot and in front of other customers including Plaintiff's roommate and roommate's girlfriend, defamed Plaintiff in the eyes of the public as the public now thinks of Plaintiff as a criminal." Complaint at ¶ 231.

**{¶25}** Defamation concerns a publication that contains a false statement made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business, or profession. *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-0hio-1041, 883 N.E.2d 1060, ¶ 9.

**{¶26}** As pleaded, the defamation claim did not involve any statement made by Shamblin; McKee alleged that the arrest itself was defamatory because it was "false" and it occurred in public. We previously stated that Shamblin had qualified immunity on the false arrest claim, and that qualified immunity extends to a defamation claim premised on the same conduct. As pleaded, the defamation claim is an attempt to alternatively plead a nonviable false arrest claim.

## F. Invasion of Privacy

**{¶27}** The ninth cause of action alleged that both Shamblin and Delahanty invaded McKee's privacy: Shamblin allegedly "terrified Plaintiff into giving additional information" about products whose purchase McKee did not wish to make public; Delahanty allegedly repeated McKee's social security number in front of Walmart personnel and repeated "unknown amounts of confidential information over the insecure police radio in his car." Complaint at ¶ 232-235.

**{¶28}** "An actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."

*Housh v. Peth*, 165 Ohio St. 35, 38, 133 N.E.2d 340 (1956), paragraph two of the syllabus. "[T]o assert a tortious invasion of privacy claim, plaintiff must show that the area intruded upon was private, and that the intrusion of the defendants was unwarranted and offensive or objectionable to the reasonable [person]." *Krause v. Case W. Reserve Univ.*, 8th Dist. Cuyahoga No. 70712, 1996 Ohio App. LEXIS 5784, *25 (Dec. 19, 1996), citing *M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St.3d 497, 507, 634 N.E.2d 203 (1994).

**{¶29}** This claim fails on its face because McKee's act of purchasing his merchandise from a store open to the public showed that he did not consider the items he bought to be private. McKee did not allege that he utilized a self-checkout in order to ensure that a cashier would not know what he purchased. In addition, he was not the only customer in the store — the complaint alleged that there was a "long line" of customers waiting at the exit to have their receipts checked by store personnel, and some of the those customers were presumably waiting in line with him at checkout. Finally, the complaint failed to identify the purchases that McKee wished to keep from the public. While there may be an argument that some products are of such a personal nature that a purchaser might desire to keep their identity private, there is nothing from the face of the complaint to show that the items McKee purchased were of such a personal nature that discretion dictated that publication would be offensive or objectionable to the reasonable person.

**{¶30}** The invasion of privacy claim against Delahanty presents a different question. The publication of an individual's social security number may form the basis of an invasion of privacy action. *See Lambert v. Hartmann*, 178 Ohio App.3d 403, 2008-Ohio-4905, 898 N.E.2d 67, ¶ 27 (1st Dist.), *rev'd on other grounds*, 125 Ohio St.3d 231, 2010-Ohio-1483, 927 N.E.2d 585. Nevertheless, as an employee of a political subdivision, Delahanty is immune from suit.

**{¶31}** R.C. 2744.03(A)(6) states that an employee of a political subdivision is immune from liability unless (a) the employee's acts were manifestly outside the scope of the employee's official responsibilities, (b) the employee's acts were done with malicious purpose, in bad faith, or in a wanton or reckless manner, or (c) liability is expressly imposed upon the employee by a section of the Revised Code. McKee did not allege that Delahanty's conduct fell within any of these exceptions to liability. The complaint alleged only that Delahanty "loudly repeated" McKee's social security number to verify the digits of the number as given to him by McKee. *See* complaint at ¶ 145. While he might have been more discreet in verifying the social security number, there is no allegation that Delahanty acted in bad faith or in a wanton or reckless manner by doing so. *Ghaster v. Rocky River*, 8th Dist. Cuyahoga No. 99779, 2013-Ohio-5587, ¶ 42.

## II. Claims against Wilson, Nietert, and Lograsso

### A. Libel

**{¶32}** The tenth cause of action is a libel claim against Lt. Wilson, Chief Nietert, and law director Lograsso, whose written statements concerning their investigation into the incident involving McKee were alleged to have intentionally misrepresented facts as shown by body camera video taken by the police officers on the scene.

**{¶33}** The investigation at the heart of this cause of action was prompted by an email that McKee sent to Nietert, in which he complained about the "stress of the false arrest and that it would throw off his sleep schedule for the whole week." Complaint at ¶ 167. Wilson investigated McKee's complaint and concluded that the police officers were justified in detaining McKee after he failed to present the receipt for his purchases and that McKee was "purposely goading the involved officers to take action against him in an effort to file an illegal search or illegal arrest lawsuit at a later time." *Id*. at ¶ 176. Lograsso issued a legal opinion stating that Shamblin's demand that McKee present his ID was the functional equivalent of seeking the information sought under R.C. 2921.29(A). *Id*. at ¶ 179. Nietert then wrote McKee stating that McKee had been placed under arrest for refusing to identify himself, that it was after arrest that McKee had "a change of heart and agreed to cooperate" with the police, and that once McKee had properly identified himself, he was released without charges. *Id.* at ¶ 184.

**{¶34}** "In Ohio, 'libel' is defined generally as a false written publication, made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession." (Citations omitted.) *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 7, 651 N.E.2d 1283 (1995).

**{¶35}** A defendant can invoke the defense of qualified privilege to a claim for libel where "circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty" or where "the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do." *Hahn v. Kotten*, 43 Ohio St.2d 237, 245-246, 331 N.E.2d 713 (1975).

**{¶36}** Wilson's statements were subject to a qualified privilege for statements made in internal police communications "made between law enforcement officers and [which] concern matters in which the officers have a common interest." *Black v. Cleveland Police Dept.*, 96 Ohio App.3d 84, 89, 644 N.E.2d 682 (8th Dist.1994). *See also Davis v. Warrensville Hts.*, 8th Dist. Cuyahoga No. 72722, 1998 Ohio App. LEXIS 117, *9 (Jan. 15, 1998).

**{¶37}** Lograsso's legal opinion was immune from liability under R.C. 2744.03(A)(7), which grants immunity to a city law director to the extent that the law director is "entitled to any defense or immunity available at common law or established by the Revised Code." Lograsso's legal opinion was absolutely privileged because it was "a communication made by the law director of a village or municipality in his official capacity[.]" *Flynn v. Relic*, 8th Dist. Cuyahoga No. 41404, 1980 Ohio App. LEXIS 12103, *10 (June 26, 1980).

**{¶38}** Nietert's communication to McKee suffered from a more mundane issue than privilege — there was no allegation that the letter was published to any third party. The complaint uses the words "public record" to describe the writing, presumably indicating McKee's belief that the accessibility of these writings under R.C. 149.01, the Ohio Public Records law, is sufficient to establish publication. "'Publication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed.'" *Hecht v. Levin*, 66 Ohio St.3d 458, 460, 613 N.E.2d 585 (1993), quoting 3 Restatement of the Law 2d, Torts, Section 577(1) (1965). McKee did not allege that the letter was communicated to any person other than himself — he alleged only that "Defendant Nietert wrote an evasive and boilerplate letter to Plaintiff * * *." Complaint at ¶ 184. The claim for relief against Nietert failed to establish the publication element of a defamation claim.

## B. Ratification

**{¶39}** The twelfth cause of action alleged that Wilson, Nietert, and Lograsso ratified the actions of police officer Shamblin, who allegedly engaged in a "proprietary function" when he arrested McKee for failing to provide identifying information. Complaint at ¶ 248.

**{¶40}** Even if we assume without deciding that ratification of Shamblin's conduct existed in this context, there is no allegation that Wilson, Nietert, and Lograsso acted with malicious purpose, in bad faith, or in a wanton or reckless manner by doing so. *See* R.C. 2744.03(A)(6). On that basis, the claims against them were properly dismissed.

### III. Claims Against South Euclid

#### A. Intentional Torts

{¶41} The city is immune from all intentional tort claims because R.C. 2744.02(B), which states those circumstances in which immunity does not apply, contains no exceptions to immunity for intentional tort claims. *Thornton v. Cleveland*, 176 Ohio App.3d 122, 2008-Ohio-1709, 890 N.E.2d 353, ¶ 6 (8th Dist.); *Henderson*, 8th Dist. Cuyahoga No. 101149, 2015-Ohio-15, at ¶ 62.   The court did not err by dismissing claims for relief 1, 3, 4, 5, 6, 7, 8, 9, and 10 against the city.

#### B.  Negligence

{¶42} The second count of the complaint alleged that the city was negligent in failing to inform or train a police officer, acting as a security guard,  about the limits of the "merchant's privilege" to detain a person for a reasonable length of time if the merchant has probable cause to believe the person unlawfully took items.

{¶43} The operation of a police department is a governmental function for which the city is immune.  *See* R.C. 2744.01(C)(2)(a).  There are only five exceptions  to a political subdivision's governmental immunity: (1) the negligent operation of a motor vehicle by an employee; (2) the employee's negligent performance of proprietary functions; (3) the negligent failure to keep public roads open and in repair; (4) the negligence of employees occurring within or on the grounds of buildings used in connection with the performance of governmental functions; or (5) express imposition of liability by statute.   *See* R.C. 2744.03(B)(1)-(5).

**{¶44}** The complaint does not allege any facts falling within these exceptions to the city's immunity. McKee did raise R.C. 2744.03(B)(2) — that the city was liable for the security guard's negligence — but that exception to immunity applies only to *proprietary* governmental functions. As pleaded, the negligence count alleged that the city "improperly informed and/or trained" the security guard. "[T]he provision of police services and the training of police are governmental functions subject to statutory immunity." *Wingfield v. Cleveland*, 8th Dist. Cuyahoga No. 100589, 2014-Ohio-2772, ¶ 13.

## C. Respondeat Superior

**{¶45}** The eleventh count of the complaint alleged that the city was vicariously liable for the actions of Shamblin, Delahanty, Wilson, Nietert, and the security guard under a theory of respondeat superior.

**{¶46}** "A political subdivision may not be held liable under a theory of respondeat superior unless one of the exceptions to the sovereign immunity listed in R.C. 2744.02(B) applies." *Reno v. Centerville*, 2d Dist. Montgomery No. 20078, 2004-Ohio-781, ¶ 53, citing *Lee v. Cleveland*, 151 Ohio App.3d 581, 2003-Ohio-742, 784 N.E.2d 1218 (8th Dist.). McKee's argument fails because his claims do not fall within any exception to immunity under R.C. 2744.02(B), nor has he argued that any of the statutory exceptions to immunity exist. *Woods v. Wellston*, S.D.Ohio No. 2:02-cv-762, 2005 U.S. Dist. LEXIS 45447, *50 (June 15, 2005).

**{¶47}** With respect to the security guard, a claim for respondeat superior will not lie against the city because the security guard was not acting in the course and scope of her employment as a city police officer. *See Hubbard v. Charter One Bank*, 8th Dist. Cuyahoga No. 104146, 2017-Ohio-1033, ¶ 24. McKee specifically alleged that the security guard's "actions show that she considered her actions as being in the scope of her employment as a private security guard enforcing store policy, not in the scope of her employment as a South Euclid police officer." Complaint at ¶ 45. In fact, McKee specifically alleged in the eleventh cause of action that the security guard's actions "were taken in the course of her employment by Security Hut, and Security Hut is vicariously liable for her actions." *Id*. at ¶ 243.

{¶48} With respect to Shamblin, Delahanty, Wilson, and Nietert, we acknowledge that their qualified immunity "is no shield to the employer's liability for acts under the doctrine of respondeat superior." *State ex rel. Sawicki v. Lucas Cty. Court of Common Pleas*, 126 Ohio St.3d 198, 2010-Ohio-3299, 931 N.E.2d 1082, ¶ 28, citing *Adams v. Peoples*, 18 Ohio St.3d 140, 142-143, 480 N.E.2d 428 (1985). Nevertheless, McKee framed their conduct under the eleventh cause of action as "part of that city's proprietary functions of 'Providing Retail Security' and 'Supervising Retail Security[.]'" Complaint at ¶ 245. There are no facts pleaded to show that Shamblin, Delahanty, Wilson, and Nietert were engaged in the proprietary function of providing retail security. The facts pleaded in the complaint leave no doubt that Shamblin, Delahanty, Wilson, and Nietert were engaged in governmental functions relating to a police department — only the security guard was engaged in providing retail security.

## D. Ratification

{¶49} The twelfth cause of action alleged that the city ratified the actions of Shamblin "in the course of the city's performance of the proprietary functions of 'Providing Retail Security' and 'Supervising Retail Security.'" Complaint at ¶ 148.

**{¶50}** Ohio does not recognize an independent cause of action for ratification. As pleaded, the twelfth count of the complaint is nothing more than a respondeat superior cause of action, where ratification of an employee's actions is required to show that the employer adopted acts committed by an employee who was acting outside the scope of employment. *Riotte v. Cleveland*, 195 Ohio App.3d 387, 2011-Ohio-4507, 960 N.E.2d 496, ¶ 18 (8th Dist.). The complaint claimed that Shamblin was acting outside the scope of his employment and was, in essence, providing "retail security" because he was "enforcing the policy of a private business and/or his opinions about merchants' rights." Complaint at ¶ 207. We rejected this argument in our discussion of the third cause of action and apply that same conclusion here: the complaint shows that Shamblin arrested McKee for an alleged violation of a law requiring a person to give identifying information. That was an act fully within the course and scope of Shamblin's duties as a police officer.

**{¶51}** The security guard was not acting in the course and scope of her employment as a city police officer at the time the events giving rise to the complaint occurred. A principal ratifies the unauthorized act of his agent if the "principal, with full knowledge of the facts, conducts himself in a way which manifests his intention to approve an earlier act performed by his agent which did not bind him." *Karat Gold Imports, Inc. v. United Parcel Serv., Inc.*, 62 Ohio App.3d 604, 611, 577 N.E.2d 115 (8th Dist.1989). To constitute ratification of employee conduct outside the scope of employment, the ratified conduct must further or promote the employer's business. *Martin v. Cent. Ohio Transit Auth.*, 70 Ohio App.3d 83, 92, 590 N.E.2d 411 (10th Dist.1990).

**{¶52}** The security guard's outside employment was too attenuated to constitute a benefit or furtherance of the city's business. The complaint alleged that the city misconstrued and misrepresented evidence shown on the body camera video to justify the security guard's actions, but the city gained no benefit from doing so. Absent ratification, the security guard's conduct was not attributable to the city and thus not actionable against it. The complaint shows only that the city investigated the incident and rejected McKee's assertion that the security guard needed probable cause to stop him. This conclusion did not approve her actions; it merely found that she acted justifiably by stopping McKee on suspicion of shoplifting.

**{¶53}** Judgment affirmed.

It is ordered that appellees recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MELODY J. STEWART, JUDGE

EILEEN A. GALLAGHER, P.J., and
LARRY A. JONES, SR., J., CONCUR