[Cite as *Meekins v. Oberlin*, 2019-Ohio-2825.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

MATTHEW MEEKINS,                        :

    Plaintiff-Appellant,          :

                           No. 107636

    v.                             :

CITY OF OBERLIN, ET AL.,                :

    Defendants-Appellees.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED
**RELEASED AND JOURNALIZED:** July 11, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-16-869402

---

***Appearances:***

Harvey Abens Iosue Co., L.P.A., David L. Harvey III, Matthew B. Abens, and Jason T. Hartzell, *for appellant.*

Baker, Dublikar, Beck, Wiley & Mathews, and Gregory A. Beck; City of Oberlin Law Director, and Jon D. Clark, *for appellee.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Plaintiff-appellant Matthew Meekins appeals from the trial court's decision granting summary judgment in favor of defendant-appellee the city of Oberlin ("Oberlin" or the "city") on Meekins' claims of false arrest/imprisonment

and malicious prosecution under 42 U.S.C. 1983 ("Section 1983"). Meekins contends that he was wrongfully arrested and prosecuted after the Oberlin Police Department failed to properly investigate false claims made by his son's mother that he had sent her threatening text messages and violated a civil protection order. Meekins contends that the trial court erred in entering summary judgment in favor of the city because genuine issues of material fact exist as to the city's liability under Section 1983. For the reasons that follow, we reverse the trial court's judgment and remand for further proceedings.

**Factual and Procedural Background**

{¶ 2} Meekins and Kimberlee George were involved in a relationship; in April 2015, they had a son. The couple's relationship deteriorated and Meekins filed an action in the Lorain County Juvenile Court to establish paternity and obtain visitation with his son (the "juvenile court case").

{¶ 3} On December 30, 2015, George obtained an ex parte domestic violence civil protection order from the Lorain County Court of Common Pleas based on her claim that Meekins had sent her threatening emails on November 17, 2015 and December 29, 2015. The couple's son was also listed as a protected party under the ex parte civil protection order. A full hearing on George's petition for a civil protection order was scheduled for January 14, 2016.

{¶ 4} On January 3, 2016, George went to the Oberlin Police Department and claimed that Meekins had violated the civil protection order by sending her screen shots of prior text conversations that they had exchanged. George indicated

that she wanted to pursue criminal charges against Meekins. Two days later, George returned to the Oberlin Police Department and indicated that her attorney had advised her to file a police report regarding threatening emails she had allegedly received from Meekins in November and December 2015. George again indicated that she wanted to pursue criminal charges against Meekins. Patrol Officer Melissa Lett spoke with George on both occasions and prepared police reports regarding George's allegations. There is nothing in the record to indicate that Officer Lett ever spoke with Meekins regarding the allegations.

{¶ 5} Officer Lett forwarded the police reports to the city prosecutor for consideration of the charges. After reviewing the allegations, the city prosecutor recommended charging Meekins with domestic violence in violation of R.C. 2919.25(C) relating to the email allegedly sent on December 29, 2015.[1] The prosecutor indicated that charging Meekins with domestic violence based on the November 2015 emails was "more problematic," noting that "the statute requires that the defendant knowingly believe that the offender will cause imminent physical harm." The Oberlin Police Department requested a warrant for Meekins' arrest on a charge of domestic violence based on the December 29, 2015 email.

{¶ 6} The Oberlin Municipal Court refused to issue an arrest warrant based on the December 29, 2015 email, finding a lack of probable cause for a charge of domestic violence due to the absence of "imminent" harm.

---

[1] The December 29, 2015 email allegedly stated: "I get off work tomorrow at 4 and I will be at your house by 5:15. You better answer the door or I swear I will level your entire f****** house killing everyone inside. Do not p*** me off. — Matthew M."

{¶ 7} Meekins denied sending any threatening emails to George. On January 7, 2016, the Lorain County Common Pleas Court rescheduled the full hearing on George's petition for a domestic violence civil protection order from January 14, 2016 to February 2, 2016 so that both parties could submit "all electronic devices in their possession * * * to an independent forensic examiner."

{¶ 8} Meekins hired an expert to examine his cell phone and laptop in an attempt to determine the source of the email messages allegedly sent to George. The expert issued a report (the "January 31, 2016 expert report") in which he concluded that the Google searches and locations associated with the email account from which the threatening emails were allegedly sent to George "more closely related" to George than Meekins. The expert further stated that this fact, combined with the "lack of corroborating artifacts" on Meekins' electronic devices, strongly suggested that Meekins did not send the threatening emails. The January 31, 2016 report was shared with George's counsel and, two days later, George dismissed her petition for a domestic violence civil protection order.

{¶ 9} On March 22, 2016, a final pretrial was held in the juvenile court case. It was recommended that Meekins be granted regular visitation with his son. George refused to agree to visitation and a trial was scheduled for April 14, 2016.

{¶ 10} The next day, at approximately 11:30 a.m., George returned to the Oberlin Police Department and reported that she had received a series of texts, beginning on January 12, 2016 and continuing through March 16, 2016, from eight different phone numbers, the content of which threatened her and her son. George

told Oberlin Patrol Officer Matthew Sustarsic that, although none of the phone numbers was Meekins' phone number, she believed the texts were from Meekins, who was either using a "burner" phone or was sending the texts by "spoofing" other telephone numbers, i.e., making the sender appear to be someone other than the actual source. Officer Sustarsic testified that George appeared "very frightened" and "very upset." He stated that George told him that she had pursued "other avenues * * * to try and get help" but "didn't feel she was getting any help" and that she "hadn't heard anything back" regarding the prior complaints she had made to the Oberlin police regarding Meekins.

{¶ 11} Officer Sustarsic testified that George's allegations were "unusual" and "different" because (1) none of the numbers from the text messages were identified as being associated with Meekins and (2) they involved threats by an accused to his own child, which Officer Sustarsic had only seen once or twice before in his 20-year career.

{¶ 12} Officer Sustarsic testified that he had no knowledge of "spoofing," that he had never previously handled a "spoofing" complaint and that he had had no training regarding "spoofing" or electronic evidence. He testified that he reviewed the police reports regarding the prior complaints George had made against Meekins and could not determine why no action had been taken on them. He confirmed that there is nothing in the police reports to indicate that anyone from the Oberlin Police Department ever spoke with Meekins about the emails he had allegedly sent in November and December 2015. Officer Sustarsic prepared a supplement to the

January 5, 2016 report Officer Lett had prepared detailing the new allegations made by George. He made no effort to contact Meekins, no effort to otherwise determine whether Meekins had, in fact, sent any of the text messages at issue and no attempt to speak with Patrol Officer Lett regarding the prior allegations George had made against Meekins and the status of the investigation regarding those allegations.

{¶ 13} Officer Sustarsic testified that because he was the sole patrol officer on duty at the police department that day — as was the case "about 60 percent of the work week or so" — he was unable to contact Meekins or otherwise investigate George's complaint, other than to ask Oberlin police detective Jessica Beyer, who was more knowledgeable regarding electronic evidence, to explain "spoofing" to him. He indicated that Detective Beyer "tr[ied] to look online and figure it out and explain it to [him]."

{¶ 14} Officer Sustarsic stated that he believed he may have tried calling some of the numbers allegedly associated with the texts, but did not recall the results of any such calls and did not note the results of any such calls in his report. He likewise could not recall if he contacted the court to determine the status of any pending cases involving the parties, including with respect to the civil protection order referenced in George's earlier complaint. Officer Sustarsic stated that he did not ask to interview Meekins because it was not his "role" or "position" to interview individuals, that his "job is patrol * * * to take calls" and that he knows "what [his] boundaries are." He stated that, at the time, there was no day shift sergeant to serve as a supervisor, so "depending on the day," his supervisor would have either been

Lieutenant Michael McCloskey or Chief Torres. Officer Sustarsic testified that he gave Lieutenant McCloskey "a brief rundown" regarding George's allegations, but did not recall specifically what he or Lieutenant McCloskey said. Lieutenant McCloskey testified that when George came in, Officer Sustarsic gave him a "heads up" that there was a complainant "up front" regarding Meekins, but that they did not discuss any details of the case.

{¶ 15} Later that afternoon, before his shift ended at 3:00 p.m., Officer Sustarsic executed a request for an arrest warrant and three complaints charging Meekins with one count of domestic violence in violation of R.C. 2919.25(C) and two counts of aggravated menacing in violation of R.C. 2903.21(A). In these complaints, Officer Sustarsic alleged that, on or about March 23, 2016, Meekins:

- did, knowingly cause [George] to believe that [Meekins] would cause serious physical harm to a member of [George's] immediate family, to wit: G.G., in violation of Section 2903.21(A)(M-1) of the Ohio Revised Code;

- did, knowingly cause [George] to believe that [Meekins] would cause serious physical harm to the person or property of [George], in violation of Section 2903.21(A)(M-1) of the Ohio Revised Code;

- did, by threat of force, knowingly cause [George] to believe that he would cause imminent physical harm to her, [George] being a member of [Meekins'] family; in violation of Section 2919.25(C)(M-4) of the Ohio Revised Code.

{¶ 16} Officer Sustarsic also executed an affidavit in which he stated:

1. I am a Police Officer for the City of Oberlin and was at all times pertinent to this matter.

2. Kimberlee George did state that she had received numerous threats to herself and her son, [G.G.]. The threats, to her wellbeing and

mortality, are reported to have come from the father of her child [G.G.], Matthew Meekins.

3. Factual matters set forth in the report and supplements, if applicable, are true and accurate.

{¶ 17} Once he completed these documents, Officer Sustarsic forwarded them to "records" for filing with the Oberlin Municipal Court. Officer Sustarsic could not recall whether he spoke with the prosecutor regarding the case before preparing the request for an arrest warrant. However, there is no evidence in the record that he did so. There is likewise nothing in the record to indicate that the documents were reviewed, or approved, by a supervisor prior to filing. The following morning, March 24, 2015, the request for an arrest warrant was filed with the Oberlin Municipal Court, attaching the complaints and affidavit Officer Sustarsic had executed the previous day. Officer Sustarsic could not recall whether the police reports or any other information was included in the "packet" submitted to the court with the request for an arrest warrant. The Oberlin Municipal Court granted the request, finding probable cause based on the information submitted to the court, [2] and issued a warrant for Meekins' arrest.

{¶ 18} On March 25, 2016, the Oberlin Municipal Court granted another request for an ex parte domestic violence temporary protection order filed by George. Later that day, Meekins was arrested at the Ritz Carlton, in Cleveland, Ohio, where he was employed as the manager, and taken to the Lorain County jail. No one

---

[2] The arrest warrant issued by the Oberlin Municipal Court states that "[a]n affidavit, statements and a report were filed with the complaints."

from the Oberlin Police Department attempted to contact Meekins or in any way investigate George's allegations prior to his arrest. Meekins remained in jail until March 29, 2016.

{¶ 19} At his arraignment on March 28, 2016, Meekins pled not guilty to the charges. The municipal court judge who conducted Meekins' arraignment was the same judge who denied Oberlin's initial request for an arrest warrant in January 2016 and who issued the warrant for Meekins' arrest on March 24, 2016. Meekins denied sending any threatening texts to George and provided the prosecutor with a copy of the January 31, 2016 expert report. The prosecutor advised the judge that he had received "some developing information that may relate to [the] charges" and that "would * * * suggest" that the text messages at issue were not, in fact, sent by Meekins. He stated that he had not yet had time to evaluate the information and determine "if there's substance to it or not." In response to the prosecutor's disclosure, the municipal court judge recounted the history of the court's involvement in the matter and his rationale for issuing a warrant for Meekins' arrest:

> I know the first round, we did not issue a warrant. * * * But when this second round came in * * * it seemed like an urgent-type of matter. Yet, if believed, I understood the statements that were read are of grave concern, and so the Court, out of the grave concern, issued * * * the warrant.
>
> And then there was the motion for the protection order. And once again, we had that hearing on Friday, and Ms. George appeared at that time at least to be credible.

{¶ 20} Meekins advised the judge that he believed George sent the text messages to herself in an attempt to gain an advantage in the parties' custody

dispute. He asked the judge what would happen if the party who sent the text messages to George continued to send them. The judge responded:

THE COURT: Well, that's a legitimate question. Let's talk about that.

Obviously, you should talk to your attorney about it. But as a matter of procedure, how would that happen?

What would happen is — what could happen is, if the alleged victim receives — says she receives another communication and says it is from you then what will have to happen is the police then will once again go through the same procedure.

Now, there are — what appears — the telephone numbers you're giving * * * to the police, I don't know how sophisticated and what type of — you know, who's looking into all this. We took this for face value only because, once again, she appeared, she testified under oath. It's a serious matter, if believed, which was believable at the time. But there's lots of numbers on here. I'd have to assume that somebody might look into that into your concern. Your attorney might be in contact with the Oberlin Police Center or the prosecutor and say, look * * * this number comes from this person. Look, this number comes from — I called this person, this person answered.

I don't know if the police actually went through and did that before they presented this to the judge. I don't know if they did or they didn't to see if these are credible or not. But once again, when this information comes into court and we get it from the police department, we presume that they've done something that they're convinced that otherwise they were not going to present it to the judge, They say, hey, look, this is serious. This is a serious matter. We don't know who all of these numbers are. There's no way to confirm them. Or we do know, and we've checked on them.

We don't have any of that information. If it happens again, it will be vetted in that manner. In other words, it goes to the police. The police then have to decide, do they give it to the prosecutor? Do they give it to the judge? They have to make that decision.

Once they make that decision and it comes to the judge, now having had this conversation with you and having this information, we can do a number of different things. * * *

{¶ 21} The municipal court judge further explained that if the police thought any future complaints were credible, the police would ask for new charges to be filed or the issue could come before the court as an alleged bond violation, in which case the court would hold a hearing on the alleged bond violation "unless the Court believes it's * * * an urgent matter of someone's safety." The judge advised Meekins that he should "be in contact with * * * whoever is looking into what these numbers mean, who owns these" and indicated that "[s]ome phone company somewhere is going to tell us who owns these numbers at some point, I presume —."

{¶ 22} On March 29, 2016, Meekins was released with a GPS monitoring device and was barred from entering the city of Oberlin.

{¶ 23} On April 7, 2016, George filed another report with the Oberlin Police Department, alleging that Meekins had violated the protection order issued on March 25, 2016. Detective Beyer took the report. Detective Beyer contacted Meekins, who denied having any contact with George. The Oberlin Police Department subpoenaed Meekins' and George's cell phone records. On April 12, 2016, the Oberlin Police Department took Meekins' cell phone for safekeeping, noting on the property receipt that George was not to be made aware that Meekins had turned over his cell phone to the police "per the prosecutor [and] defense attorney." On May 3, 2016, Detective Beyer sent a report to the prosecutor detailing the results of her review of the subpoenaed cell phone records. She noted that George's cell phone records showed more calls between George and Meekins than Meekins' cell phone records showed and that the cell service provider had advised

that this was because the calls had been "spoofed" to make it appear as if the calls were coming from Meekins when, in fact, they did not originate from his phone. Beyer further noted that George had been asked several times to allow her phone to be forensically examined but that she refused to consent to a forensic examination of her phone.

{¶ 24} Meekins' expert determined that seven of the numbers from which George allegedly received text messages were landlines, incapable of sending text messages, and that the eighth number belonged to an individual named J.B.

{¶ 25} The following day, the city prosecutor filed a motion to dismiss the charges against Meekins, asserting that "there is substantial doubt about whether the defendant was the author of the threatening texts which were the basis of the pending charges." The prosecutor detailed the facts giving rise to the "uncertainty" and stated that, given this uncertainty, the city did not wish to pursue the charges at this time. The prosecutor indicated, however, that "[f]urther evidence or investigation may clarify the facts giving rise to the complaints and further action may be warranted." The charges against Meekins were dismissed on May 4, 2016. Meekins claimed that as a result of his unlawful arrest and imprisonment, he missed Easter and his son's first birthday party and that his employer put him on unpaid administrative leave for more than a month.

{¶ 26} On September 22, 2016, Meekins filed a complaint against Oberlin and various John Doe defendants, i.e., "individuals and police officers with the Oberlin Police Department whose names and addresses are currently unknown,"

asserting state-law claims of false arrest/imprisonment (Count 1) and battery (Count 5) and three separate violations of 42 U.S.C. 1983 — one for false arrest/imprisonment in violation of the Fourth Amendment (Count 2), one for malicious prosecution in violation of the Fourth Amendment (Count 3), and one for "customs and policies causing constitutional violations and ratification" (Count 4) — arising out of the events detailed above. Meekins alleged that the Oberlin Police Department "knowingly, intentionally, and deliberately" failed to take any steps to determine whether Meekins was the "actual source" of the threatening text messages George claimed to have received or do any other "real investigative work on the matter" before requesting an arrest warrant. He further alleged that if the Oberlin Police Department had exercised "due diligence" in investigating George's allegations, it would have discovered that the text messages were not sent by Meekins and would not have requested an arrest warrant. He also alleged that if the request for an arrest warrant had not contained false statements and material omissions, the Oberlin Municipal Court would not have found probable cause to issue the warrant.

{¶ 27} The city filed an answer denying Meekins' allegations and asserting various affirmative defenses, including failure to state a claim upon which relief may be granted and statutory immunity.

{¶ 28} On May 26, 2017, Oberlin filed a motion for summary judgment. Oberlin argued that it was entitled to summary judgment on Counts 1, 3 and 5 of Meekins' complaint (Meekins' claims for false arrest/imprisonment, malicious

prosecution and battery) on grounds of "governmental immunity" pursuant to R.C. Chapter 2744. Oberlin also argued that it was entitled to summary judgment on Counts 1, 2, 3 and 4 of his complaint because Meekins' arrest was based on a warrant issued by the Oberlin Municipal Court, there was probable cause for his prosecution and Meekins had failed to identify any "official [municipal] policy" that caused a deprivation of his constitutional rights.

{¶ 29} Meekins opposed the motion. Meekins argued that statutory political subdivision immunity did not apply to his Section 1983 claims and that summary judgment was improper as to those claims because (1) the arrest warrant was based on false or misleading statements or omissions and was, therefore, void ab initio, (2) genuine issues of material fact existed as to whether there was probable cause for Meekins' arrest and prosecution and (3) evidence of the Oberlin Police Department's understaffing, lack of training and inadequate investigative policies and procedures created genuine issues of material fact regarding "the customs [Oberlin] tolerated and endorsed" and Meekins' entitlement to relief under 42 U.S.C. 1983.

{¶ 30} On July 26, 2017, the trial court granted the city's motion for summary judgment as to all Meekins' claims on the grounds of statutory political subdivision immunity.

{¶ 31} Meekins settled his claims against the John Doe defendants and, on July 28, 2017, voluntarily dismissed his claims against those defendants with prejudice.

{¶ 32} Meekins appealed to this court. This court affirmed the trial court's entry of summary judgment in favor of Oberlin as to Meekins' state-law claims, concluding that they were barred by statutory political subdivision immunity, but reversed the trial court's entry of summary judgment as to Meekins' Section 1983 claims and remanded the case for further proceedings as to those claims. *Meekins v. Oberlin*, 8th Dist. Cuyahoga No. 106060, 2018-Ohio-1308, ¶ 20, 32.

{¶ 33} On remand, the trial court, once again, granted summary judgment in favor of Oberlin on Meekins' Section 1983 claims. The trial court did not explain the reasoning for its decision.

{¶ 34} Meekins appealed, raising the following assignment of error for review:

> The trial court erred in granting summary judgment to Appellee City of Oberlin on Appellant's causes of action for violations of 42 U.S.C. §1983 (Counts II, III and IV of the Complaint) as genuine issues of material fact exist and Appellee is not entitled to judgment as a matter of law.

**Law and Analysis**

**Standard of Review**

{¶ 35} We review summary judgment rulings de novo, applying the same standard as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). We accord no deference to the trial court's decision and conduct an independent review of the record to determine whether summary judgment is appropriate.

{¶ 36} Under Civ.R. 56, summary judgment is appropriate when no genuine issue exists as to any material fact and, viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party, entitling the moving party to judgment as a matter of law.

{¶ 37} On a motion for summary judgment, the moving party carries an initial burden of identifying specific facts in the record that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, the nonmoving party has the reciprocal burden to point to evidence of specific facts in the record demonstrating the existence of a genuine issue of material fact for trial. *Id.* at 293. Summary judgment is appropriate if the nonmoving party fails to meet this burden. *Id.*

### Establishing a Section 1983 Claim

{¶ 38} 42 U.S.C. 1983 states, in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress * * *.

{¶ 39} Section 1983 itself grants no substantive rights; however, "a plaintiff may use it as a conduit through which to allege that he [or she] suffered the violation

of a specific right guaranteed by the Constitution or federal law." *Hudkins v. Indianapolis*, S.D.Ind. 1:13-cv-01179-SEB-DML, 2015 U.S. Dist. LEXIS 103039, 24-25 (Aug. 6, 2015). To prevail on a claim under Section 1983, a plaintiff must prove two essential elements: (1) that he or she was deprived of a right, privilege, or immunity secured by the United States Constitution or federal law and (2) the deprivation was caused by a person acting under color of state law. *1946 St. Clair Corp. v. Cleveland*, 49 Ohio St.3d 33, 34, 550 N.E.2d 456 (1990); *Harris v. Sutton*, 183 Ohio App.3d 616, 2009-Ohio-4033, 918 N.E.2d 181, ¶ 20; *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir.1995).

{¶ 40} In this case, Meekins seeks relief under Section 1983 on claims of false arrest[3] and malicious prosecution in violation of the Fourth Amendment. The Fourth Amendment protects "[t]he right of the people to be secure in their persons * * * against unreasonable * * * seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." The Fourth Amendment to the U.S. Constitution. As a "'general rule,'" "'Fourth Amendment seizures are 'reasonable' only if based on probable cause to believe that the individual has committed a crime.'" *Bailey v. United States*, 568 U. S. 186, 192, 133 S.Ct. 1031, 185 L.Ed.2d 19 (2013), quoting *Dunaway v. New York*, 442 U.S. 200, 213, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

---

[3] Although Meekins labels his claim "false arrest/imprisonment," his allegations of false imprisonment concern his detention incident to, and arising out of, his alleged unlawful arrest. Accordingly, we do not separately address his allegations of false imprisonment.

{¶ 41} The city asserts that because Meekins' arrest was based on a warrant issued by the Oberlin Municipal Court, it has a "complete defense" to his false arrest claim.  It further asserts that Meekins' false arrest and malicious prosecution claims must fail because (1) probable cause existed for the issuance of the arrest warrant and (2) Meekins has not identified a specific municipal policy that led to the alleged deprivation of his constitutional rights.

{¶ 42} Meekins contends that there was no probable cause to arrest or prosecute him for the crimes at issue and that the warrant that was issued for his arrest was void ab initio.  He further contends that the city's policy or custom of understaffing of its police department, its failure to provide adequate training to its police officers regarding how to conduct a "proper investigation" and its lack of police department policies or procedures governing various issues related to the supervision, investigation and handling of criminal complaints caused Meekins to be "illegally arrested" and prosecuted, violating his Fourth Amendment rights.

**Elements of False Arrest and Malicious Prosecution Claims**

{¶ 43} To prevail on a claim of false arrest in violation of the Fourth Amendment, a plaintiff must prove that the arresting officer lacked probable cause to arrest the plaintiff.  *Henderson v. Euclid*, 8th Dist. Cuyahoga No. 101149, 2015-Ohio-15, ¶ 53*; Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir.2010); *Voyticky v. Timberlake*, 412 F.3d 669, 677 (6th Cir.2005).

{¶ 44} To prevail on a claim of malicious prosecution in violation of the Fourth Amendment, a plaintiff must prove that (1) the defendant made, influenced,

or participated in the decision to criminally prosecute the plaintiff, (2) there was a lack of probable cause for the criminal prosecution, (3) as a consequence of the legal proceeding, the plaintiff sustained a "deprivation of liberty" "apart from the initial seizure" and (4) the criminal proceeding was resolved in favor of the plaintiff. *Henderson* at ¶ 35; *Sykes* at 308-309.

{¶ 45} "Probable cause" exists where the "'facts and circumstances within the officer's knowledge * * * are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Henderson* at ¶ 37, quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979). Thus, "[a] police officer has probable cause only when he discovers reasonably reliable information that the suspect has committed a crime." *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir.2000); *see also Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir.2015) ("An officer possesses probable cause to arrest when, at the moment the officer seeks the arrest, 'the facts and circumstances within [the officer's] knowledge and of which [he or she] had reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense.'"), quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

{¶ 46} A probable-cause determination is based on the "totality of the circumstances" and must take into account both "inculpatory and exculpatory evidence." *Gardenhire* at 318. Police officers may not make "hasty, unsubstantiated

arrests with impunity" and cannot "simply turn a blind eye toward potentially exculpatory evidence known to them." *Ahlers v. Schebil*, 188 F.3d 365, 371-372 (6th Cir.1999).

{¶ 47} As this court explained in *Henderson*:

> Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion. *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir.1993); *United States v. McClain*, 444 F.3d 556, 562 (6th Cir.2005). In this regard, a law enforcement officer is entitled to rely on an eyewitness's statements because this comports with the general notion that an eyewitness's statements are based on firsthand observations, and are generally entitled to a presumption of reliability and veracity. *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir.1999). An eyewitness's statements may not be relied upon however, where at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollections. *Id.*

*Henderson*, 2015-Ohio-15, at ¶ 38.

{¶ 48} A "bare allegation" of criminal wrongdoing, in and of itself, is insufficient to establish probable cause that an accused has committed a crime. *Gardenhire* at 317. However, "'[a] finding of probable cause does not require evidence that is completely convincing or even evidence that would be admissible at trial; all that is required is that the evidence be sufficient to lead a reasonable officer to conclude that the arrestee has committed or is committing a crime.'" *Parsons v. Pontiac*, 533 F.3d 492, 501 (6th Cir.2008), quoting *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir.2008). The existence of probable cause in a Section 1983 action generally "'presents a jury question, unless there is only one reasonable determination possible.'" *Pontiac* at 501, quoting *Fridley v. Horrighs*, 291 F.3d 867,

872 (6th Cir.2002); *see also Alman v. Reed*, 703 F.3d 887, 896 (6th Cir.2013) ("'When no material dispute of fact exists, probable cause determinations are legal determinations that should be made' by the court. * * * But '[i]f disputed factual issues underlying probable cause exist, those issues must be submitted to a jury for the jury to determine the appropriate facts.'"), quoting *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir.2005).

{¶ 49} As a general matter, "[a]n arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to [Section 1983]." *Voyticky*, 412 F.3d at 677, citing *Baker v. McCollan*, 443 U.S. 137, 143-144, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Henderson*, 2015-Ohio-15, at ¶ 53 However, this defense is not available if an officer, in requesting the arrest warrant, (1) "'knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that create[d] a falsehood'" and (2) "'such statements or omissions were material, or necessary, to the finding of probable cause.'" *Sykes*, 625 F.3d at 305, quoting *Wilson v. Russo*, 212 F.3d 781, 786-787 (3d Cir.2000); *see also Ruble v. Escola*, 898 F.Supp.2d 956, 973 (N.D.Ohio 2012). If an affidavit used to obtain an arrest warrant contains false statements or material omissions, a determination must be made as to whether the affidavit was sufficient to establish probable cause after the false statements are set aside or the omitted information is included. *Sykes* at 305; *Buchanan v. Metz*, 647 Fed.Appx. 659, 664 (6th Cir.2016), citing *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir.1989), and *Burleigh v. Detroit*, 80 Fed.Appx. 454, 458 (6th Cir.2003).

**{¶ 50}** In this case, Meekins contends that the arrest warrant lacked probable cause and was, therefore, void ab initio because Officer Sustarsic's "rushed" investigation led him to omit material facts from the request for the arrest warrant that the Oberlin Municipal Court should have had before it in determining whether to issue a warrant for Meekins' arrest. Specifically, although Officer Sustarsic averred in his affidavit in support of the request for arrest warrant that the threats were "reported to have come from [Meekins]" and that "[f]actual matters set forth in the report and supplements, if applicable, are true and accurate," he (1) omitted the fact that each of the text message threats originated from phone numbers that had no known connection to Meekins, (2) did not disclose that many of the numbers from which the texts purportedly originated were landlines incapable of texting and that he had made no effort to speak with Meekins or otherwise confirm George's allegations prior to seeking an arrest warrant and (3) made no mention of the civil protection order case involving George and Meekins or the parties' ongoing custody dispute. He contends that if Officer Sustarsic had accurately stated all of the relevant facts in his request for an arrest warrant, the Oberlin Municipal Court would not have issued the arrest warrant.

**{¶ 51}** In what remains of this case,[4] however, Meekins seeks to impose liability not on Officer Sustarsic or any other officer who allegedly violated his constitutional rights, but rather, on the city that employed the officers. A

---

[4] As stated above, Meekins allegedly settled and dismissed his claims against the individual officer(s) involved.

municipality is not vicariously liable for the acts of its employees under Section 1983. *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[A] municipality cannot be held liable solely because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.") (Emphasis deleted.); *Arrington-Bey v. Bedford Hts.* 858 F.3d 988, 994 (6th Cir.2017) ("Municipalities are not vicariously liable in § 1983 actions merely because they employ someone who has committed a constitutional violation."). Under Section 1983, local governments are responsible only for "their own illegal acts." (Emphasis deleted.) *Pembaur v. Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Municipal liability exists under Section 1983 only where a plaintiff establishes that a municipal "policy or custom" was the "moving force" behind the deprivation of the plaintiff's rights. *Monell* at 694; *Brown v. Chapman*, 814 F.3d 447, 462 (6th Cir.2016); *Gregory v. Shelby Cty.*, 220 F.3d 433, 441 (6th Cir.2000) ("For liability to attach, there must be execution of a government's policy or custom which results in a constitutional tort."). There must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation" for the municipality to be subject to a Section 1983 action. *Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

{¶ 52} For purposes of municipal liability under Section 1983, a plaintiff may establish the existence of a municipal policy or custom through evidence of (1) an official policy or enactment; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision or (4) a custom of

tolerance of or acquiescence in federal rights violations. *Sutton*, 183 Ohio App.3d 616, 2009-Ohio-4033, 918 N.E.2d 181, at ¶ 21, citing *Pembaur*, 475 U.S. at 480, 106 S.Ct. 1292, 89 L.Ed.2d 452, and *Thomas v. Chattanooga*, 398 F.3d 426, 429 (6th Cir.2005).

{¶ 53} Meekins does not contend that an express, written policy or procedure was the "moving force" behind the deprivation of his constitutional rights. Rather, he asserts that the city's "inaction," i.e., its failure to provide adequate staffing, training and supervision, amounted to an "official [municipal] policy" that "led to [his] constitutional harm."

{¶ 54} Inadequacy of police training or supervision may serve as the basis for Section 1983 liability only where the failure to train or supervise amounts to "deliberate indifference to the rights of persons with whom the police come into contact." *Canton* at 387 ("Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.").

{¶ 55} Thus, to succeed on a Section 1983 claim against a municipality based on inadequate police training or supervision, a plaintiff must show that: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; (3) the inadequacy was closely related to or actually caused the plaintiff's injury and (4) the violated right is clearly established. *Brown*, 814 F.3d at 463; *Arrington-Bey*, 858 F.3d at 994-995.

{¶ 56} "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Commrs. of Bryan Cty. v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Shadrick v. Hopkins Cty.*, 805 F.3d 724, 737 (6th Cir.2015) (observing that the Supreme Court has described "deliberate indifference" as "'lying somewhere between the poles of negligence at one end and purpose or knowledge at the other'" and that it is "'routinely equated * * * with recklessness'"), quoting *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

{¶ 57} Although a "pattern" of similar constitutional violations is "ordinarily necessary" to demonstrate deliberate indifference, "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." *Bryan Cty.* at 409; *see also Shadrick*, 805 F.3d at 738-739. "'[O]bvious potential for such a violation' has two elements: It must be obvious that the failure * * * will lead to certain conduct, and it must be obvious (i.e., clearly established) that the conduct will violate constitutional rights." *Arrington-Bey* at 995. Thus, single-incident liability exists "in a narrow range of circumstances" where a federal rights violation "'may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations.'" *Bryan Cty.* at 409. "The high degree of predictability may also support an inference of causation — that the municipality's indifference

led directly to the very consequence that was so predictable." *Bryan Cty.* at 409-410.

{¶ 58} In support of his claim that the city's "policy" of inadequate staffing, training or supervision was the "moving force" behind the violation of his constitutional rights, Meekins points to Officer Sustarsic's testimony that (1) because he was the only patrol officer on duty on March 23, 2016 — as was the case the majority of the time he worked — he was unable to speak with Meekins before requesting an arrest warrant and (2) this "lack of staffing" caused Officer Sustarsic to "cut short" his investigation and prevented him from substantiating George's allegations before seeking a warrant for Meekins' arrest. With respect to the city's alleged inadequate training of officers, Meekins presented evidence that the city lacked specific policies, procedures or training — beyond any field training upon hire — on issues such as: how to take a police report from an individual, how to investigate a criminal complaint, how to handle a domestic violence complaint, how and when to interview potential defendants prior to arrest, "spoofing" or electronic evidence, what to do after taking a criminal complaint and what should be included with a warrant request. Meekins also presented evidence that the city had no policies or procedures with respect to the supervision and oversight of patrol officers when deciding to seek an arrest warrant. Meekins contends that the "appalling lack of [employee] training" that the city "systematically tolerated" made "it all but certain harms would arise" to individuals such as Meekins, and led to the violation of Meekins' Fourth Amendment rights.

{¶ 59} Although "[a] *Monell* claim that survives summary judgment is exceedingly rare, and rightly so," *Hanson v. Madison Cty. Detention Ctr.*, 736 Fed.Appx. 521, 542 (6th Cir.2018), we believe that this is such a case.

{¶ 60} Following a thorough review of the record and construing the evidence in the light most favorable to Meekins, we find that triable issues of fact exist as to (1) whether Officer Sustarsic recklessly made misleading statements or omitted material information when requesting a warrant for Meekins' arrest and (2) whether the municipal court judge would have issued the arrest warrant in the absence of the alleged misleading statements or omissions. We further find, based on the evidence before us, that reasonable jurors could disagree as to whether the alleged inadequacy of the city's staffing, policies, training or supervision was obvious and so likely to result in the violation of the constitutional rights of potential defendants that the city could be found to be deliberately indifferent. We further find that reasonable jurors could disagree as to whether the city was a "moving force" behind the alleged violation of Meekins' constitutional rights, i.e., whether but for the city's alleged "policy or custom" of inadequate staffing, training or supervision, Meekins' constitutional rights would not have been violated.

{¶ 61} Accordingly, the trial court erred in granting summary judgment in favor of the city on Meekins' Section 1983 claims. Meekins' assignment of error is sustained.

{¶ 62} Judgment reversed.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., J., CONCURS;
PATRICIA ANN BLACKMON, P.J., DISSENTS WITH SEPARATE OPINION

PATRICIA ANN BLACKMON, P.J., DISSENTING:

{¶ 63} I respectfully dissent from the majority's opinion reversing the trial court's decision granting summary judgment. As the majority points out, the only defendant left in this case is the city of Oberlin, and "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "Instead, it is when execution of a government's policy or custom * * * inflicts the injury that the government as an entity is responsible under § 1983." *Id.*

{¶ 64} In expanding on this legal theory, the United States Supreme Court held that "to infer a thoroughly nebulous 'policy' of 'inadequate training' on the part of the municipal corporation from [a] single incident * * * provides a means for circumventing *Monell's* limitations altogether." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). In other words, "[p]roof of a single

incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy * * *." *Id.* at 823-824.

{¶ 65} Accordingly, Meekins's false arrest and malicious prosecution claims cannot stand under Section 1983 unless his "customs and policies" claim independently survives summary judgment. In the case at hand, Meekins simply offers no evidence of systemic fault or deliberate indifference by the city of Oberlin and no causal connection between an alleged unconstitutional policy and a violation of Meekins's constitutional rights. *See Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ("the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact").

{¶ 66} I would find that Meekins cannot overcome summary judgment on his federal claims against the city of Oberlin. Therefore, I would affirm the trial court.